**In re the ESTATE OF Sarah E. BOREN, Deceased.**

No. 06–07–00104–CV.

Court of Appeals of Texas, Texarkana.

Submitted Aug. 13, 2008.

Decided Oct. 3, 2008.

Robert G. Chadwick, Jr., Campbell & Chadwick, PC, Dallas, TX, for appellant.

Jeff C. Starnes, McLaughlin, Hutchinson, Starnes & Biard, LLP, Paris, TX, for appellee.

1. *In re Estate of Boren*, No. 06–07–00104–CV, 2008 WL 4058072, 2008 Tex.App. LEXIS 6682 (Tex.App.–Sept. 4, 2008, no pet. h.).

Before MORRISS, C.J., CARTER and MOSELEY, JJ.

OPINION

*Opinion by Justice MOSELEY.*

The previous ruling in this case as decided on September 4, 2008,[1] is withdrawn and this opinion is rendered in its stead.

Sarah E. Boren's last will and testament named her nephew, Richard Finley, as her first choice to serve as the independent executor of her estate, with his mother, Jeanetta Finley (Sarah's sister-in-law), as his alternative or successor. The will also devised her estate in equal shares to Richard and Jeanetta as her sole beneficiaries if her husband, Charles Boren, did not survive her. The trial court entered an order refusing Richard's application for probate and his application for appointment as independent executor. The trial court also impliedly ruled that Richard and Jeanetta had effectively disclaimed any claim to inheritance under Sarah by signing documents which complied with Section 37A of the Texas Probate Code.

Richard had served as attorney-in-fact for Sarah and her husband, Charles, neither of whom had children. However, Charles was determined incapacitated and a guardian of his estate was appointed; the issuance of the letters of guardianship rendered the durable power of attorney given by Charles no longer effective.[2]

Charles's guardian had made application for the sale of real estate and this application was pending at Charles's intestate death in December 2004. Richard, who still held the authority granted him under Sarah's power of attorney, had opposed

2. *See* Tex. Prob.Code Ann. § 485 (Vernon 2003).

the sale of the real estate. However, after Charles's death, Richard voiced dismay over the conflict among the family. Dee Boren (Charles's brother) testified that Richard told relatives that it was his desire to mend rifts in the family; Dee further testified that as he and Richard stood over Charles's coffin, Richard said, "[M]e and Momma is going to sign a waiver or papers and remove ourselves from this." Richard testified further that, "He [Finley] said I know we're not entitled to nothing that Charles has got, and he said I want the family to get back close, said I promise you I will do that." Beverly Parks (Charles's niece and his guardian at the time of his demise) said that Richard had told her that it was his desire to ameliorate the conflicts within the family and that, "He said what do I have to do to get this family back together?" She further stated that Richard had told her that peace in the family was extremely important to him, that he did not need or want anything that Sarah or Charles had owned, and inquired if there was anything he could sign or anything he could do to demonstrate that fact and thus assuage the hard feelings against him within the extended families of Charles and Sarah. Richard later told Parks that he had spoken with Jeanetta and that she was in agreement with him to sign such an agreement in order to "get the family back together." Parks indicated that, relying on these conversations, she had her attorney prepare the waiver/disclaimers in controversy.

Richard retrieved the documents prepared by Parks's lawyer and took them to an attorney of his own who, although he did not read them and did not comprehend their content, advised Richard to sign them. Richard and Jeanetta then signed the disclaimers and returned them to Parks's attorney, who caused them to be filed in the papers of the Charles Boren guardianship, which had yet to be closed.

These disclaimers were entitled, "Waiver of Service, Waiver of Interest, and Approval and Consent to Sale of Real Property"; after two sentences which recited the appearance and identity of the signors, each of the documents states, "I hereby waive any interest or claim I have or may have in or against their [i.e., Charles's and Sarah's] respective estates by will, inheritance, right of survivorship, or otherwise." Richard subsequently indicated that he believed the disclaimers to do nothing more than to consent to the sale of real estate, expressing ignorance that these had the effect of terminating any claims he had under the will of Sarah.

However, on January 7, 2005 (eight days after the disclaimers had been filed in the guardianship), two things happened on the same date: (1) Richard and Jeanetta filed revocations of the disclaimers which they had previously signed, and (2) Sarah died.

On August 29, 2006, Richard filed an application for the probate of Sarah's will which also requested his appointment as independent executor; this application was countered with two separate contests: one filed by Parks and another by Marcella Matney, Sarah's sister.

After a hearing before the court, the trial court rejected the contest filed by Parks on the basis that although she was an heir-at-law of Charles, she did not occupy a similar position in regard to Sarah's estate; she, therefore, did not have standing to contest the application. However, the court found Matney to have standing to challenge Richard's application.

The order entered by the court denied the application of Richard for the probate of the will of Sarah. It also made evidentiary findings (1) that the disclaimers of Richard and Jeanetta "were in substantial compliance with Section 37A of the Texas Probate Code," (2) that the disclaimers

were signed knowingly and voluntarily by them, and (3) that Richard was an unsuitable person to act as executor because of demonstrated violations of his fiduciary duties to Charles and Sarah and it would be improper to name him because of discord and animosity between him and other relatives of Sarah.

## JURISDICTION OVER APPEAL

■ Neither party raised any question of whether this Court has jurisdiction over this appeal and at oral arguments, both maintained that this is an appealable order. Despite that, the first inquiry an appellate court must make in any case is whether it has jurisdiction to consider the appeal. *See Materials Evolution Dev. USA, Inc. v. Jablonowski*, 949 S.W.2d 31, 33 (Tex.App.–San Antonio 1997, no pet.); *McClennahan v. First Gibraltar Bank F.S.B.*, 791 S.W.2d 607, 608 (Tex.App.–Dallas 1990, no writ). If the appellate court lacks jurisdiction, the appeal must be dismissed. *See Jablonowski*, 949 S.W.2d at 33; *McClennahan*, 791 S.W.2d at 608. Generally, appellate jurisdiction exists only in cases in which a final judgment has been rendered that disposes of all issues and parties in the case. *See Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 268 (Tex. 1992). It is fundamental error for an appellate court to assume jurisdiction over an interlocutory appeal when it is not expressly authorized by statute. *See New York Underwriters Ins. Co. v. Sanchez*, 799 S.W.2d 677, 678–79 (Tex.1990).

Section 5(g) of the Texas Probate Code provides that "[a]ll final orders of any court exercising original probate jurisdiction shall be appealable to the courts of appeals." TEX. PROB.CODE ANN. § 5(g) (Vernon Supp.2008). However, other than certain provisions in the Code that certain orders are final and appealable (e.g., TEX.

PROB.CODE ANN. § 55(a) (Vernon 2003), which declares a determination of heirship to be final and appealable), the Probate Code does not clarify which orders are final and appealable. *Young v. First Cmty. Bank, N.A.*, 222 S.W.3d 454, 456 (Tex.App.–Houston [1st Dist.] 2006, no pet.).

■ As a general rule, appeals are only available from a final judgment. *Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 195 (Tex.2001). Similarly, except when "specially provided by law," there may be but "one final judgment" rendered in any cause. TEX.R. CIV. P. 301. However, Texas law has long recognized that probate proceedings may involve multiple judgments "on certain discrete issues," each of which may be "final for purposes of appeal." *De Ayala v. Mackie*, 193 S.W.3d 575, 578 (Tex.2006).

■ In the case before us, although the application of Richard (named in the will of Sarah to serve as independent executor without bond) to be appointed executor was rejected, there was no personal representative of the estate of Sarah appointed.[3] The right to serve as the executor of an estate is a "substantial right" and a denial of that right is a final and appealable order. *In re Estate of Vigen*, 970 S.W.2d 597, 599 (Tex.App.–Corpus Christi 1998, no pet.). To be appealable, the order only has to finally dispose of the issue or controverted question for which that particular part of the proceeding was brought. TEX. PROB.CODE ANN. § 5(g); *Taliaferro v. Tex. Commerce Bank*, 660 S.W.2d 151, 153 (Tex.App.–Fort Worth 1983, no writ). Thus, a probate order is appealable if it "finally adjudicates a substantial right." *Spies v. Milner*, 928 S.W.2d 317, 318 (Tex. App.–Fort Worth 1996, no writ); *Vineyard*

---

**3.** There was no ruling on the admissibility of the will of Sarah for probate in the order and there was no application for letters testamentary filed by Jeanetta.

*v. Irvin,* 855 S.W.2d 208, 210 (Tex.App.–Corpus Christi 1993, no writ).

■■■ We determine that the order denying Richard's application to serve as independent executor was the determination of a substantial right and, as such, was a final and appealable order which we have jurisdiction to review.

## DISPOSITION OF FIRST THREE POINTS OF ERROR

Richard's first three points of error maintain (1) that the trial court erred in finding that Richard had refused to serve as executor or resigned as executor pursuant to Section 76 of the Texas Probate Code; (2) that the trial court erred in finding that a disclaimer executed by Richard pursuant to Section 37A of the Texas Probate Code barred Richard from appointment as executor; and (3) that the trial court erred in finding that Richard had waived his right to appointment as executor by signing the disclaimer. However, there is neither anything in the order signed by the trial court nor in the findings of fact and conclusions of law which makes any of these findings. Rather, the trial court found Richard as "unsuitable" to serve as independent executor and that appointment of him would be "improper." Therefore, we overrule these points of error.

## RULING ON UNSUITABILITY TO SERVE

In determining the identity of persons who are disqualified to serve as executor or administrator of an estate, Section 78(e) of the Texas Probate Code adds in the catch-all provision that a person is disqualified to serve if the applicant for letters is "[a] person whom the court finds unsuitable." TEX. PROB.CODE ANN. § 78(e) (Vernon 2003). The term "unsuitable" is not defined.

■■■ Richard challenges the legal sufficiency of the evidence for the finding that he is unsuitable to serve as executor of the estate. However, as in *Zorilla v. Wahid,* 83 S.W.3d 247, 252 n. 1 (Tex.App.–Corpus Christi 2002, no pet.), we follow the majority of courts in concluding that "when the trial court's ruling on the merits is reviewed under an abuse of discretion standard, the normal sufficiency of the evidence review is part of the abuse of discretion review and not an independent ground for reversal." *Id.* (citing, e.g., *Crawford v. Hope,* 898 S.W.2d 937, 940–41 (Tex.App.–Amarillo 1995, writ denied); *Thomas v. Thomas,* 895 S.W.2d 895, 898 (Tex.App.–Waco 1995, writ denied); *In re Driver,* 895 S.W.2d 875, 877 (Tex.App.–Texarkana 1995, no writ)); *see Handley v. Handley,* 122 S.W.3d 904, 907 (Tex.App.–Corpus Christi 2003, no pet.) (division of property reviewed for abuse of discretion). A court's ruling on a probate application is generally reviewed under an abuse of discretion standard. *See In re Estate of Robinson,* 140 S.W.3d 801, 807 (Tex.App.–Corpus Christi 2004, pet. dism'd) (reviewing order finding person unsuitable to serve as executor under an abuse of discretion standard); *Olguin v. Jungman,* 931 S.W.2d 607, 610 (Tex.App.–San Antonio 1996, no writ) (reviewing order finding person unsuitable to serve as executor under an abuse of discretion standard). The trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Cire v. Cummings,* 134 S.W.3d 835, 838–39 (Tex.2004). The mere fact a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate an abuse of discretion has occurred. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 242 (Tex.1985). Under an abuse of discretion standard of review, we must

make an independent inquiry of the entire record to determine if the trial court abused its discretion and are not limited to reviewing the sufficiency of the evidence to support the findings of fact made. *See Chrysler Corp. v. Blackmon,* 841 S.W.2d 844, 853 (Tex.1992) (orig. proceeding).

■ The lack of a definition of "unsuitable" in the Probate Code leaves the implication that the trial court has discretion in making that determination. *In re Estate of Foster,* 3 S.W.3d 49, 55 (Tex.App.–Amarillo 1999, no pet.) ("[T]he cases considering the provision do not establish a 'bright line' test to be applied in making that determination.").

■ Here, the trial court was presented substantial evidence regarding Richard's suitability to serve as executor of the estate.

Some of this evidence is found in the testimony of Dee; he said that Richard had told him that it was Richard's intention while attorney-in-fact for Charles and Sarah to transfer all of their property into his (Richard's) name. When Dee protested this, Richard responded that there was nothing Dee could do to prevent it. Dee testified that on another occasion, Charles had been upset because he had signed papers at Richard's request, but did not know what the documents were; as it developed, the papers were a collateral pledge of Charles's $12,000.00 certificate of deposit to guarantee a loan for Richard's daughter to purchase a house. In another incident, Dee discovered that Richard was intending to sell a tract of 127 acres to Charles for $65,000.00. Dee protested that Charles neither needed the property nor possessed the ability to even know how to locate it. Richard responded that if

Charles did not buy the land, he (Richard) would lose it through foreclosure. Richard continued the personal use of the tract of land after the sale and the Borens subsequently deeded him forty acres of it as a gift.

■ In addition, there was testimony from Randy Boren, Charles's nephew and one-time guardian. Randy testified that Richard had confiscated Charles's tools and equipment for his own use and that while Randy was Charles's guardian, Richard had refused to provide records and receipts of his activities as attorney-in-fact for Charles, a responsibility he held.[4]

When Parks assumed the guardianship of Charles, she discovered that Richard had not paid the fees for Charles's nursing home care for some three months and that the account was some $9,000.00 in arrears. Parks also discovered that during the period commencing on January 3, 2002 through December 31, 2004, there had been automatic teller machine withdrawals from Charles's and Sarah's accounts totaling $5,271.75, despite the fact neither Charles nor Sarah knew how to use an automatic teller machine. She found further discrepancies in that Richard had written checks over that same period of time totaling $1,890.22 for fuel and "blank" checks for $38,015.21 in addition to cash withdrawals amounting to $19,115.94. Despite the fact that Charles and Sarah owned no livestock, there was $5,730.00 spent on cattle and $2,734.07 on tractor repairs, although Charles and Sarah had no tractor. The implication was that Richard had both cattle and a tractor and that he had converted these funds to his own use. Although Charles and Sarah had no outstanding notes upon which to make

---

4. An attorney-in-fact under a durable power of attorney has a duty to keep and maintain records of its activities and to account for those activities. TEX. PROB.CODE ANN. § 489B (Vernon 2003).

payments, Richard wrote checks aggregating $5,521.71 with the notation that they were for note payments.

Taking this testimony into account, there was evidence for the trial court to find Richard unsuitable to be named as executor and that Richard had breached his fiduciary duty in his use of power of attorney for Charles. The finding that Richard was unsuitable to serve as independent executor was no abuse of discretion. Accordingly, we overrule Richard's fourth and fifth points of error which challenge those findings.

## IS DISCLAIMER EFFECTIVE PURSUANT TO SECTION 37A OF THE TEXAS PROBATE CODE?

█ Richard's sixth point of error claims the trial court erred in finding the "waiver" (i.e., disclaimer) documents signed by Richard and Jeanetta were sufficient to constitute disclaimers of interest by them to inheritance under the estate of Sarah pursuant to Section 37A of the Texas Probate Code. Richard's seventh point of error claims there was legally insufficient evidence to support this finding.

█ We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex.

2003); *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex.1998).

The trial court's order found "that the Waivers filed by Richard and Jeanetta Finley were in substantial compliance with Section 37A .... and that the clear language of the Waivers along with the conversations Richard Finley had with other Boren family members evidenced a clear intent to waive or disclaim their interest in either the Charles or Sarah E. Boren estates, by will, inheritance, right of survivorship, or otherwise." The order went further to find that "the Waivers were not ambiguous" and point out that Richard had the waivers (disclaimers) reviewed by his attorney before signing; and finally, found that "the Waivers were voluntarily executed." [5]

As previously mentioned, the pertinent portion of the disclaimers signed by Richard and Jeanetta said, "I hereby waive any interest or claim I have or may have in or against their [Charles's and Sarah's] respective estates by will, inheritance, right of survivorship, or otherwise."

The documents were titled "Waiver of Service, Waiver of Interest, and Approval and Consent to Sale of Real Property." Following the language quoted above, the documents went on to reflect that the signors waived citation and service and did not object to guardian Parks's pending application in the Charles Boren guardianship to sell real property.

The effect of a disclaimer under Section 37A [6] of the Texas Probate Code is that

---

**5.** We note that the order makes no specific finding that they are barred from inheritance by these disclaimer documents although one can infer that effect from the wording of the order. However, since all of the parties take the position that this was the effect of the order, we indulge in that inference. This inference cannot be extended to the interest of Jeanetta, however. Although she was a

witness in the hearing on Richard's application, there is nothing to show that she was made a party to this action.

**6.** Section 37A of the Texas Probate Code is that which deals with disclaimers of inheritance from decedents. On September 1, 2007 (after trial but before this matter was presented to us on appeal), Section 37A was amend-

the disclaiming party is treated as having "predeceased the decedent." TEX. PROB. CODE ANN. § 37A(c) (Vernon Supp.2008).[7] Therefore, if the disclaimers signed by Richard and Jeanetta were effective, the devises to them as contained in Sarah's will would lapse; neither Richard nor Jeanetta were Sarah's lineal descendants and the will contained no other contingent beneficiaries. Therefore, if the disclaimers were effective and operative, the only practical effect of the last will and testament of Sarah would be to designate the appointment of an independent executor (or executrix) to serve without bond; her assets would pass to all of her heirs-at-law.

Section 37A(h)[8] of the Texas Probate Code contains rather detailed requirements concerning the filing of such disclaimers. As pertains to our circumstances in this case, a simplistic summary of the requirement for filing a disclaimer dictates that:

(1) If there is an action in probate pending on the decedent, then the disclaimers are to be filed in that probate action unless it is an independent administration and more than a year has passed since the issuance of letters;

(2) If there is no probate action pending on the estate of the decedent or if the estate is an independent administration wherein more than a year has passed since the appointment of an administrator then:

(a) If the decedent was a Texas resident, then it is to be filed with the county clerk of the county of residence of the decedent.

(b) If the decedent was not a Texas resident and the decedent had an interest in real property in Texas, the disclaimer is to be filed "with the county clerk of the county in which such real property or interest therein is located." It then goes on to say that the disclaimer is to be "recorded by such county clerk in the deed records of that county."

See TEX. PROB.CODE ANN. § 37A(h) (Vernon Supp.2008).

On the same day that Sarah died,[9] Richard and Jeanetta filed revocations of these purported disclaimers. These documents of revocation were filed with the county clerk of the county of Sarah's residence.

Section 37A(k)[10] of the Texas Probate Code is the portion of the statute dealing with the revocability of a disclaimer. It provides that, "Any disclaimer *filed and served* under this section shall be irrevocable." TEX. PROB.CODE ANN. § 37A(k) (Vernon Supp.2008) (emphasis added).

There is no evidence that the filing requirement of the original disclaimers was ever met and until the disclaimers had been properly filed, they remained revocable. Rather than being filed in accord

---

ed. As to the pertinent portions of this statute, there is no substantial change in the law. (*See* Act of May 15, 2007, 80th Leg., R.S., ch. 1170, § 3.01, 2007 Tex. Gen. Laws 4000, 4001–03). However, the relevant portions under discussion herein were not substantially changed. For clarity and the convenience of the future readers of this opinion, references in this opinion to Section 37A are to the post-amendment status of the law and not to the law as it existed at trial.

7. Formerly Section 37A, Texas Probate Code with the same wording.

8. Formerly Section 37A(a), Texas Probate Code with the same wording.

9. Although it was the same date, there is nothing to show whether this was done before or after Sarah's death on that date.

10. This was formerly in Section 37A(d) of the Texas Probate Code prior to the 2007 amendment; the relevant wording is identical.

with the Texas Probate Code, they were filed in the papers of the guardianship of Charles. To compound the constructive notice problem this filing deficiency would provide to potential creditors or subsequent purchasers, because Charles had died, the guardianship was, for most purposes, no longer effective; the only power the person named as guardian had at that time was to submit a final accounting and conclude the guardianship. *See In re Guardianship of Moon,* 216 S.W.3d 506, 510 (Tex.App.–Texarkana 2007, no pet.); *In re Estate of Glass,* 961 S.W.2d 461, 462 (Tex.App.–Houston [1st Dist.] 1997, writ denied); *see also* TEX. PROB.CODE ANN. § 745(a)(2) (Vernon Supp.2008). Therefore, the purported disclaimers were filed in a case file which had (so far as any action other than closing the guardianship and dismissing the guardian) become moribund.

▮ Under the statute, once the proper filing and service of the disclaimer occurs, alea jacta est;[11] it then becomes irrevocable. Because Richard and Jeanetta revoked their disclaimers before the disclaimers signed by them had been properly filed, they were effectively revoked. Accordingly, despite the fact that the form of the disclaimers was sufficient to satisfy the statute, irrespective of the intention they held to disclaim inheritance under Sarah at the time they were signed, and regardless of their expressed desires to heal the rift within the family, they were no longer operative after the revocation occurred.

We recognize that Section 37A(h) of the Texas Probate Code (which deals with filing of the memorandum of a disclaimer) is not a paragon of clarity. It first plainly states that disclaimers are to be filed "in the probate court in which the decedent's will has been probated or in which proceedings have been commenced for the administration of the decedent's estate or which has before it an application for either of the same." Then, contemplating circumstances under which no administration is currently active, it enumerates five different circumstances [12] wherein there is no active administration of an estate and says simply that in those circumstances, disclaimers "shall be filed with the county clerk of the county of the decedent's residence" without specificity of the particular records in the office of the clerk where these disclaimers would be recorded by the clerk. Then, in the same sentence, it provides that "if the decedent is not a resident of this state but real property or an interest therein located in this state is disclaimed, a written memorandum of disclaimer shall be filed with the county clerk of the county in which such real property or interest therein is located, and recorded by such county clerk in the deed records of that county." Pointing out that distinction, but ignoring the distinction between filing and recording, Matney maintains that in this case, "there was no requirement that the waiver be filed in the deed records" (with the supposed corollary that so long as it has been presented to the clerk and is on file anywhere in the office of the clerk, the requirement of the statute is satisfied).

---

**11.** "The die is cast." (The phrase supposedly uttered by Caesar upon crossing the Rubicon River with his army.)

**12.** (1) if the administration of the decedent's estate is closed, or (2) after the expiration of one year following the date of the issuance of letters testamentary in an independent admin-istration, or (3) if there has been no will of the decedent probated or filed for probate, or (4) if no administration of the decedent's estate has been commenced, or (5) if no application for administration of the decedent's estate has been filed.

From the early days of Texas jurisprudence, the recognized object of the filing and recording statutes has been to provide a means of constructive notice of the existence of a document to creditors and subsequent purchasers. *Evans v. Templeton,* 69 Tex. 375, 6 S.W. 843, 844 (1887).

One needs to recognize that at one time, county clerks had the obligation to maintain separate books and records for deeds, deeds of trust, mechanics liens, etc. However, since substantial statutory changes were made to the prescribed duties of county clerks in 1989, there is no duty of a county clerk to maintain a separate set of "deed records." [13] Under the statutory scheme in use today, a county clerk may consolidate records together and record, index, or classify them as one of seven different types of records, none of which is called "deed records." TEX. LOC. GOV'T CODE ANN. §§ 193.001(a), 193.008(d). If one were to adhere to the kind of strict interpretation of Section 37A(h) of the Texas Probate Code Matney suggests, since there are no longer "deed records" in existence in those counties which do not separate the various kinds of documents, there would be no lawful place for the clerk to record the disclaimers of those who would disclaim inheritance under a nonresident. The reason a distinction was made in the Texas Probate Code between disclaimers involving nonresident and resident decedents is because the estate of a nonresident's personal property is governed by the laws of the state of residence of the decedent while the descent of the real property would be governed by the laws of Texas. *Waterman v. Charlton,* 102 Tex. 510, 120 S.W. 171, 172 (1909). On the other hand, a Texas resident decedent may have died possessed of only personal property (or the disclaimer may have been a partial disclaimer, pertaining only to personal property and not real estate). Therefore, the property disclaimed in the estate of a Texas decedent might have been only personalty and could have been finally recorded by the clerk in something other than the real property records.

■ We determine that when Section 37A(h) of the Texas Probate Code uses the phrase "shall be filed with the county clerk," it is to mean the kind of filing with a county clerk for recordation by the clerk in its records, such as in the Official Public Records of Real Property, in the Official Public Records of Personal Property and Chattels, or in the Official Public Records of Governmental, Business, and Personal Matters. (*See* TEX. LOC. GOV'T CODE ANN. §§ 193.001, 193.008(b)). That never occurred here.

■ The obvious purpose of the requirement that the disclaimers be filed is twofold: (1) to finalize the act of disclaimer and (2) to provide notice to creditors or subsequent purchasers of the fact that a disclaimer has occurred. Here, the disclaimers were filed in a guardianship proceeding of someone other than the deceased person under whom inheritance was being disclaimed. Such a filing would not be effective to place a person on notice that the disclaimer existed. Therefore, it was not a filing contemplated in Section 37A of the Texas Probate Code.

Accordingly, we reverse the implied order of the trial court that the disclaimer signed by Richard effectively barred him from inheritance from Sarah and remand the cause to the trial court for further proceedings.

---

13. TEX. LOC. GOV'T CODE ANN. §§ 193.002(a), 193.003, 193.008, 193.009 (Vernon 2008).