In the ESTATE OF James W. KAPPUS, Deceased.

No. 12–06–00233–CV.

Court of Appeals of Texas, Tyler.

Nov. 30, 2007.

Rehearing Overruled Jan. 7, 2008.

---

Dick Swift, for appellant.

Logan Odeneal, Odeneal & Odeneal, Dallas, TX, for appellee.

Panel consisted of WORTHEN, C.J., GRIFFITH, J., and HOYLE, J.

## OPINION

BRIAN HOYLE, Justice.

Sandra Kappus, ex-wife of the deceased, James W. Kappus, complains of certain trial court rulings entered in the probate of James's estate. In four issues, Sandra claims the trial court erred in its division of the estate's primary asset and by failing to remove John Kappus as independent executor of the estate and as trustee of a testamentary trust created by James's will. We affirm in part and reverse and render in part.

### BACKGROUND

In the 1980s, James, his brother, John, and their father formed Kappus Farms, a partnership. Kappus Farms purchased a 49.482 acre tract of land in Anderson County. After their father died, James and John allowed the partnership to dissolve, but they continued to own the Anderson County property together. James and Sandra Kappus were married in the early 1990s. They had two children, Casey Lynn Kappus and James Montana Kappus. Their 2004 divorce was contested, and Sandra's relationship with James's family was very strained after the divorce. Over the years, several improvements were made to the Anderson County property; some solely by James, some by

James and Sandra, and some solely by John.

After his divorce from Sandra, James executed a new will that named John as independent executor. The will also created a testamentary trust. Casey Lynn and James Montana are the beneficiaries of the trust and John is the trustee. After James's death in 2005, John began probate proceedings and was appointed independent executor. He intended to sell the Anderson County property and split the proceeds of the sale equally between himself and the estate. John found a buyer willing to pay $110,000.00 and assume a debt of approximately $7,000.00 for one of the improvements on the property, a double wide mobile home.

Sandra, on behalf of her children, opposed the proposed distribution of the proceeds from the sale of the property. Initially, she obtained an injunction to stop the sale. At the final hearing, however, she testified that she did not oppose the sale, only the distribution sought by John. Sandra presented evidence that James had placed improvements on the property, including a single wide mobile home and a double wide mobile home, that added value to the property. All parties agreed that the best alternative for selling the two mobile homes was to sell them with the property.

Sandra also, on behalf of her children, sought to have John removed as independent executor because of alleged conflicts of interest, waste, and mismanagement of funds. She presented evidence that John owns a portion of the Anderson County property and the remaining portion of the property belongs to the estate. Additionally, she presented evidence that John did not handle a debt on a vehicle properly. Finally, she said she felt that John's animosity toward her would make the situation unworkable. Based on many of the

same reasons, Sandra also sought to have John removed as trustee of the testamentary trust created in James's will.

After hearing argument and testimony, the trial court found that the estate owned 58.59% of the Anderson County property and John owned the remaining 41.41%. The trial court denied the application to remove John as independent executor and trustee. Sandra requested findings of fact and conclusions of law, which the trial court prepared and signed. This appeal followed.

### ANDERSON COUNTY PROPERTY

In her first issue, Sandra contends the evidence is legally and factually insufficient to support the trial court's division of the Anderson County property. She argues that the estate owns at least 63.45% of the property instead of 58.59% as determined by the trial court, for a difference of 4.86%.

### Standard of Review

■ When a trial court's findings are challenged, we review the entire record using the same standards of legal and factual sufficiency that we apply to review a jury's findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994). An omitted finding, supported by the evidence, may be supplied by a presumption that it supports the judgment. *Black v. Dallas County Child Welfare Unit*, 835 S.W.2d 626, 630 n. 10 (Tex.1992). A trial court's conclusions of law are reviewed de novo as legal questions. *BMC Software Belgium N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex.2002). We uphold conclusions of law on appeal if the judgment can be sustained on any legal theory the evidence supports. *Id.*

■ When a party challenges the legal sufficiency of the evidence to support an adverse finding on which it had the burden of proof, the party must show that

the evidence establishes as a matter of law all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex.2001). We credit evidence that supports the judgment if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). Anything more than a scintilla of evidence is legally sufficient to support the finding. *Minn. Mining & Mfg., Co. v. Nishika Ltd.*, 953 S.W.2d 733, 738 (Tex. 1997). More than a scintilla of evidence exists when the evidence supporting the finding, as a whole, "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997).

When attacking the factual sufficiency of the evidence supporting an adverse finding on which it bore the burden of proof, the party must show that the finding is so contrary to the great weight and preponderance of the evidence that it is clearly wrong and manifestly unjust. *In re C.H.*, 89 S.W.3d 17, 25 (Tex.2002). Further, in a bench trial, the trial court is the sole judge of the credibility of the witnesses and, taking into consideration all the surrounding circumstances in connection with the testimony, may accept or reject all or any part of that testimony. *Nelson v. Najm*, 127 S.W.3d 170, 174 (Tex. App.-Houston [1st Dist.] 2003, pet. denied).

### Application

First, we address Sandra's contention that the trial court apparently based its valuation solely on the offer of $110,000.00 plus assumption of the debt on the double wide mobile home. She argues that it was an unaccepted offer and no evidence of value. Even if we assume that the trial court based its valuation on the offer, we disagree that would be error.

The market value of a property is the price that would be accepted "by one who desires to sell, but is not obliged to sell," and would be paid "by one who desires to buy, but is under no necessity of buying." *City of Harlingen v. Estate of Sharboneau*, 48 S.W.3d 177, 182 (Tex. 2001). Sandra correctly argues that unaccepted offers to purchase property are no evidence of market value of the property. *Lee v. Lee*, 47 S.W.3d 767, 785 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). With an unaccepted offer, one that has been rejected and is no longer pending, the evidence is uncertain, speculative, and the good faith of the person making the offer is not established. *Id.* The concerns regarding uncertainty, speculation, and good faith do not apply with a valid, pending offer to purchase the property. *See City of Harlingen*, 48 S.W.3d at 182 ("If the goal of an appraisal is to ascertain market value, then logically there can be no better guide than the prices that willing buyers and sellers actually negotiate in the relevant market.").

Here, the offer to purchase the property for $110,000.00 and assume the note on the double wide mobile home was pending and had not been formally accepted. But it had never been rejected. In fact, the evidence presented to the trial court was that the offer could still be accepted and would have been accepted previously but for the injunction obtained by Sandra. Therefore, if the trial court used the offer as a starting point for valuation of the property, it would not be error. However, that does not resolve the question of the sufficiency of the evidence to support the judgment.

The record contains a "Broker's Opinion of Value" dated February 20, 2004, prepared by Dan Davis, indicating that the fair market value of the double wide mobile home and its attached porch was $11,100.00. However, Davis reported that

two storage buildings, the dog kennels, the gated entry, the stock tank, the utilities, and the driveway add an additional $5,500.00 in value. He did not address the value of the other structures on the property. In June 2005, another broker, Steve Grant, determined that the fair market value of the land was $70,000.00 while the value of the single wide mobile home, one barn, one storage building, and the dog pens together was $16,000.00. Grant specifically stated that he did not consider the double wide because it belonged to the estate. There are a number of structures he did not mention at all.

The Anderson County appraisal records for November 2005 show the land valued at $56,240.00. The county appraisal listed improvements including two mobile homes, three portable buildings, two barns, and a shed totaling $52,010.00 in value. Further, there was evidence that the dog pens cost $5,500.00 to construct but were valued at $1,000.00 by Grant. John testified that he spent $3,000.00 constructing the front entrance. Grant valued the single wide mobile home and its porch at $10,000.00 while the county appraisal assigned those two items a value of $9,460.00. The county appraisal listed three portable buildings valued at $630.00, $420.00, and $250.00. The county appraisal valued the two barns at $1,640.00 and $8,100.00. Grant valued one of the barns at $3,500.00 without mentioning the other. He also valued one of the portable buildings at $1,500.00. Finally, the county appraisal also lists a shed valued at $230.00.

There is no question that the double wide mobile home belonged solely to James at the time of his death. Title to the single wide mobile home is in James's name although it was paid for with Kappus Farms partnership money, suggesting it was a gift from the partnership to James. The two barns were also paid for with partnership money. The dog pens were built and paid for by Sandra and James during their marriage and belonged to James at the time of his death. Testimony revealed that Sandra removed two portable buildings, claiming she paid James for them before he died. Testimony does not reveal which of the three portable buildings remained on the property. There are various other structures on the property such as a stone well, a floating dock, a chicken coop, a deer feeder, a deer blind, and a skeet tower, none of which were given an individual value, but all or most of which appear to have been paid for by John. John found a buyer willing to pay $110,000.00 for the land and all improvements and who would assume the approximately $7,000.00 debt on the double wide mobile home.

The judgment and its supporting findings of fact and conclusions of law refer to the percentage of ownership in the land and improvements by the estate and John. The trial court did not prepare findings of fact identifying ownership of any item or specifically related to the value of improvements made by James or John. Instead, the trial court simply found that the estate owned 58.59% of the Anderson County property and improvements and John owned the remaining 41.41%. The evidence, however, was not presented in the same fashion. The record is clear that James's estate and John each own an undivided one-half interest in the land. What is less clear is the division of ownership of the improvements on the land.

While the record includes various numbers from which to choose, we do not know what values the trial court attributed to any given piece of property. Likewise, although the record includes some evidence of ownership of the various improvements, we do not know which of those structures the trial court included in

the 58.59% of the whole that it found belonged to the estate. Neither do we know which of those structures the trial court included in the 41.41% of the whole that it found belonged to John. While we have a complete record, we simply do not have findings of fact on all controlling issues supporting the judgment. *See Taylor v. Texas Dep't of Pub. Safety*, 754 S.W.2d 464, 468 (Tex.App.-Fort Worth 1988, writ denied) (op. on reh'g).

In a case tried before the court without a jury, in which there are findings of fact and conclusions of law, the reviewing court will indulge every reasonable presumption in favor of the findings and judgment of the trial court, and no presumption will be indulged against the validity of the judgment. *Vickery v. Comm'n for Lawyer Discipline*, 5 S.W.3d 241, 252 (Tex.App.-Houston [14th Dist.] 1999, pet. denied). Where the record is silent or ambiguous, the presumption of validity will supply by implication every proof, element, factual finding, or proper application of the law needed to support the judgment. *Id.* at 251. When the reviewing court has the benefit of a detailed record, sufficiency of the evidence is no longer presumed. *Id.* However, the presumption of validity still operates to resolve all other ambiguities in favor of the judgment. *Id.* The presumption of validity is prima facie and may be rebutted. *Id.* at 252. The appellant has the burden of demonstrating error. *Id.* To limit the scope of the presumption, the appellant should establish what facts were found by the trial court. *Id.* Although Sandra, on behalf of the children, had the right under Rule 298 of the Texas Rules of Civil Procedure to request additional findings of fact, she did not do so. *See* Tex.R. Civ. P. 298. Further, the record does not reflect that Sandra objected to the trial court's failure to make specific fact findings on value and

ownership. We are entitled, under these circumstances, to imply findings that support the judgment if they are supported by evidence. Tex.R. Civ. P. 299; *Burnside Air Conditioning & Heating, Inc. v. T.S. Young Corp.*, 113 S.W.3d 889, 893 (Tex. App.-Dallas 2003, no pet.).

The trial court heard evidence indicating which property belonged to James at the time of his death, which property belonged to John, and which property was jointly owned. The trial court also had before it evidence of values of the land and major structures on the land. We conclude there is more than a scintilla of evidence that the estate owns 58.59% of the land and improvements. *See Havner*, 953 S.W.2d at 711. Therefore, Sandra's legal sufficiency challenge fails.

Generally the trial court, when acting as fact finder, decides whether and to what extent it accepts the testimony of an individual. *See Nelson*, 127 S.W.3d at 174. We defer to the trial court's determination. *See Burnside*, 113 S.W.3d at 893. Based on the evidence, the trial court could have allotted property to the estate and John in a manner to support the specific percentages it found and those allotments can be presumed in accordance with Rule 299. Accordingly, the trial court's finding that the estate owns 58.59% of the land and improvements is not so contrary to the great weight and preponderance of the evidence that it is clearly wrong and manifestly unjust. *See In re C.H.*, 89 S.W.3d at 25. Sandra's first issue is overruled.

### REMOVAL AS EXECUTOR

In her second issue, Sandra contends the trial court erred in failing to remove John as independent executor of the estate. She asserts that, because John has an ownership interest in the property, his interests conflict with those of the ben-

eficiaries. She argues that he cannot adequately represent the estate while seeking to retain his own share of the estate.

 Independent administration of estates and the testator's right to select an independent executor of his choice are foundations of Texas law. *In re Estate of Roots*, 596 S.W.2d 240, 243 (Tex.Civ.App.-Amarillo 1980, no writ). However, removal of an independent executor is possible for certain reasons enumerated in Section 149C of the probate code. *See* TEX. PROB. CODE ANN. § 149C (Vernon Supp.2007). As alleged here, a trial court may remove the independent executor when he is proved to have been guilty of gross misconduct or gross mismanagement in the performance of his duties. *Id.* § 149C(5). The party seeking removal has the burden to establish a violation of Section 149C. *Sammons v. Elder*, 940 S.W.2d 276, 283 (Tex.App.-Waco 1997, writ denied).

John's shared ownership of the Anderson County property and improvements creates a conflict of interest. The estate seeks at least an additional 4.86% interest in the property and John is adverse to the estate's position. John and the estate are both asserting ownership over the same property. Under these circumstances, the trial court had no alternative but to remove John as independent executor. *See Street v. Skipper*, 887 S.W.2d 78, 83 (Tex.App.-Fort Worth 1994, writ denied) (independent executor removed when she had claim adverse to estate); *Formby v. Bradley*, 695 S.W.2d 782, 785 (Tex.App.-Tyler 1985, writ ref'd n.r.e.) (same). Because a conflict exists between the estate and John as to ownership of some of the property, John cannot serve as independent executor. We sustain Sandra's second issue.

### REMOVAL AS TRUSTEE

In her fourth issue, Sandra asserts that the trial court erred in finding that the trust never came into existence. She argues that the trust was created and owned property at the death of James Kappus. Because of his breach of fiduciary duty due to the conflict of interest, the argument continues, John should be removed as trustee of the testamentary trust established by James's will.

Sandra filed an application to remove John as executor and trustee due to his conflict of interest as explained above. The trial court found that, at the time of the hearing on that application, the testamentary trust had not been funded. In its conclusions of law, the trial court determined that the trust "is not in being and John Kappus has never served as Trustee." Further, it concluded that "John Kappus cannot be removed from a trust office he has never held."

Article 3.3 of James's will provides, "The residue of my estate shall be distributed in accordance with the provisions of Article 4 applicable to the Common Trust created for the benefit of my children." Article 4 sets out the provisions of the Common Trust, but the will does not specifically state or even allude to the time at which the trust is to be funded and created.

 Under the probate code, title to property devised in the will vests in the devisees immediately upon the testator's death, subject to the debts of the testator. TEX. PROB.CODE ANN. § 37 (Vernon 2003); *Johnson v. McLaughlin*, 840 S.W.2d 668, 671 (Tex.App.-Austin 1992, no writ). The devisee may be a trust. *See Larson v. Enserch Exploration, Inc.*, 644 S.W.2d 61, 63 (Tex.App.-Amarillo 1982, writ ref'd n.r.e.). To avoid application of Section 37, the will must indicate an unambiguous intent to override the general rule that assets vest in the devisees under the will at

the moment of death. *Johnson*, 840 S.W.2d at 672. Neither John's brief nor our examination of the will in its entirety revealed any intent on the part of James to postpone vesting of the trust assets. *See Bergin v. Bergin*, 159 Tex. 83, 88, 315 S.W.2d 943, 946 (1958). Therefore, pursuant to Section 37 of the probate code, James's will vested title to his residuary estate in John as trustee at the time of James's death. The trial court erred when it found otherwise.

A trust is created by "a property owner's testamentary transfer to another person as trustee for a third person." TEX. PROP.CODE ANN. § 112.001 (Vernon 2007). A person named as trustee conclusively accepts the position of trustee by signing the writing evidencing the trust or by signing a separate written acceptance. TEX. PROP.CODE ANN. § 112.009(a) (Vernon 2007). Further, a person named as trustee who exercises power or performs duties under the trust is presumed to have accepted the trust unless the person acted only (1) to preserve trust property and, within a reasonable time after acting, gave notice of rejection of the trust to all beneficiaries or (2) to inspect or investigate trust property for any purpose. *Id.* When the same person is named as independent executor and as trustee of a testamentary trust, acceptance of the position of trustee will be presumed from his or her having acted as executor. *See Gray v. McCurdy*, 114 Tex. 217, 222–23, 266 S.W. 396, 398 (1924); *Pepper v. Walling*, 195 S.W. 892, 894–95 (Tex.Civ.App.-Amarillo 1917, writ ref'd). Further, acceptance of a trust by a trustee is ordinarily presumed until he disclaims. *Lange v. Houston Bank & Trust Co.*, 194 S.W.2d 797, 801 (Tex.Civ.App.-Galveston 1946, writ ref'd n.r.e.).

A trial court may, in its discretion, remove a trustee pursuant to Texas Property Code Section 113.082(a) if the evidence warrants removal. *See* TEX. PROP. CODE ANN. § 113.082(a) (Vernon 2007). A trial court abuses its discretion when it acts without reference to any guiding rules and principles or when it acts arbitrarily and unreasonably. *In re C.R.O.*, 96 S.W.3d 442, 446 (Tex.App.-Amarillo 2002, pet. denied). The trial court's decision will be affirmed if it enjoys the support of law and some probative evidence. *Id.* at 446–47. Here, the trial court's erroneous ruling regarding the creation of the trust prevented it from reaching the crux of this complaint. As explained above, John asserts ownership of a portion of property claimed by the trust. This attempted appropriation is a violation of a fiduciary duty, a repudiation of a trust relation to the property, and, accordingly, a ground for removal. *Brault v. Bigham*, 493 S.W.2d 576, 579 (Tex.Civ.App.-Waco 1973, writ ref'd n.r.e.). Therefore, the trial court abused its discretion when it allowed John, who had violated his fiduciary duty to the trust, to retain his position as trustee. The trial court erred in denying Sandra's application to remove John as trustee. We sustain Sandra's fourth issue.

### CONCLUSION

The evidence is both legally and factually sufficient to support the trial court's determination of ownership of the property. However, because of John's conflict of interest, the trial court erred in failing to remove him as executor and trustee. Due to our disposition of issue two, we need not reach the third issue. *See* TEX.R.APP. P. 47.1.

The judgment of the trial court is *affirmed in part* and *reversed in part*. We *affirm* the trial court's disposition of the Anderson County property and improvements. We *reverse* the trial court's denial of Sandra's application to remove John as

independent executor and as trustee. We *render* judgment ordering that John be removed as independent executor of the estate of James W. Kappus and as trustee of the trust created by the will of James W. Kappus.