**John KAPPUS, Petitioner,**

v.

**Sandra L. KAPPUS, Respondent.**

**No. 08–0136.**

Supreme Court of Texas.

Argued Dec. 10, 2008.

Decided May 15, 2009.

---

William C. Odeneal Jr., Logan Odeneal, Odeneal & Odeneal, Dallas TX, for Petitioner.

Richard E. Swift Jr., Law Office of Dick Swift, Palestine TX, for Respondent.

Justice WILLETT delivered the opinion of the Court.

This appeal concerns whether an independent executor's alleged conflict of interest—here, a good-faith dispute over the executor's percentage ownership of estate assets—requires his removal as a matter of law. Probate Code section 149C lists several grounds for removing an executor, but "conflict of interest" (either actual or potential) is not among them, and we refuse to engraft such a test onto the statute. Accordingly, as none of the conditions for removal under section 149C were met in this case, we reverse the court of appeals' judgment and reinstate the trial court's order denying the motion to remove.

## I. Background

In the 1980s, James Kappus, his brother John, and their father Walter formed a partnership called Kappus Farms, which purchased 49.482 acres of land in Anderson County. In 1991, James married Sandra, and they had two children.

Walter Kappus died in 2001, which led to the unofficial dissolving of the Kappus Farms partnership. After Walter's will was probated, James and John owned the Anderson County land 50/50 as co-tenants. Throughout the time they owned the land, several improvements were added to the property: some by James alone, some by James and Sandra, and some by John alone.

In 2004, James and Sandra divorced. As part of the divorce proceedings, Sandra was given an equitable lien on the real estate for her half of the community improvements made to the land. After the divorce was final, James executed a new will that named John as independent executor (an appointment that nobody challenged) and Sandra's brother as alternative independent executor. The will also set up a testamentary trust with James's children as beneficiaries and John as trustee.

James died in 2005 after a long illness. John initiated probate proceedings, qualified as independent executor, and was issued letters testamentary. As part of the administration of the estate, John intended to pay off James's debts by selling the Anderson County property with the improvements and splitting the proceeds 50/50 between the estate and himself. A buyer offered $110,000 in cash and also agreed to assume a $7,000 debt on a double-wide mobile home, which was one of the improvements on the property.

Sandra, on behalf of her children, opposed the proposed distribution from the property sale, contending the estate was owed more than 50% of the proceeds due to several improvements James had made to the property, and she obtained an in-junction preventing the sale from closing. Sandra also sought to remove John as independent executor and trustee of the testamentary trust, alleging that he had a conflict of interest, wasted estate assets, refused to allow the children access to the Anderson County land, and incurred significant expenses in probating the will. After a hearing, the trial court issued an order and accompanying findings of fact and conclusions of law that refused to remove John and found that the Anderson County property should be divided 58.59% for the estate and 41.41% for John.

On appeal, Sandra claimed that the evidence was both legally and factually insufficient to support the trial court's property division and that the estate was owed at least 63.45% of the proceeds. Sandra also claimed the trial court erred as a matter of law in not removing John as both independent executor and trustee. The court of appeals affirmed the trial court's division of the property, but reversed the trial court's decision on removal.[1] Citing Probate Code section 149C(5), the court held that John's shared ownership of the property created a conflict of interest.[2] "Under these circumstances," the court of appeals concluded, "the trial court had no alternative but to remove John as" executor.[3] John appealed his removal to this Court, and we now reverse.

## II. Removal As Independent Executor

 Since as early as 1848, a Texas testator has been able to opt for the independent administration of his estate,[4] including the right to pick his own independent executor. While this power is "well

---

1. 242 S.W.3d 182, 191–92.

2. *Id.* at 190.

3. *Id.*

4. *Roy v. Whitaker,* 92 Tex. 346, 48 S.W. 892, 894 (1898).

fixed in the Texas law,"[5] the testator's chosen executor can be removed under Probate Code section 149C(a), which states, "The county court ... may remove an independent executor when ..." and then lists six specific grounds for removal.[6] The party seeking removal has the burden of establishing a violation of Section 149C in the trial court. Once a violation of one of the six grounds has been proven, the trial court has discretion to decide whether the violation warrants removal.

■ To begin, the grounds to *remove* an independent executor *post*-appointment are different from those to *disqualify* an executor *pre*-appointment. Probate Code section 78 sets out five different bases for disqualification of a would-be executor, including "[a] person whom the court finds unsuitable."[7] In contrast to this catch-all standard that confers broad trial-court discretion, section 149C lists six specific grounds for removal, none quite as expansive as unsuitability.[8] Sandra claims that by being a co-owner of an estate asset, John had a conflict of interest. And when John attempted to sell the land and split the proceeds evenly, despite the estate being owed more than half the proceeds, that potential conflict became an actual conflict and harmed the estate. While no subsection specifically covers "conflict of interest" in those express terms, Sandra argues that such a conflict can justify removal under subsections (2), (5), and (6) of section 149C. We consider each of these subsections in turn.

## A. Subsection (2)—"Misapplied or Embezzled"

■ Sandra's first allegation is that John misapplied or embezzled part of the property committed to his care. She claims that when John attempted to split the proceeds from the potential sale of the Anderson County land 50/50, he improperly tried to divert part of the proceeds to himself since it was ultimately decided that the estate was owed 58.59% of the proceeds.

■ We presume the Legislature chose its words carefully and intentionally.[9] Probate Code section 149C(a)(2) associates misapplication[10] with embezzle-

---

5. *Boyles v. Gresham*, 158 Tex. 158, 309 S.W.2d 50, 53 (1958).

6. The grounds for removal are:
 (1) the independent executor fails to return within ninety days after qualification, unless such time is extended by order of the court, an inventory of the property of the estate and list of claims that have come to the independent executor's knowledge;
 (2) sufficient grounds appear to support belief that the independent executor has misapplied or embezzled, or that the independent executor is about to misapply or embezzle, all or any part of the property committed to the independent executor's care;
 (3) the independent executor fails to make an accounting which is required by law to be made;
 (4) the independent executor fails to timely file the affidavit or certificate required by Section 128A of this code;

(5) the independent executor is proved to have been guilty of gross misconduct or gross mismanagement in the performance of the independent executor's duties; or
(6) the independent executor becomes an incapacitated person, or is sentenced to the penitentiary, or from any other cause becomes legally incapacitated from properly performing the independent executor's fiduciary duties.
TEX. PROB.CODE § 149C(a)(1)-(6).

7. *Id.* § 78(e).

8. *Id.* § 149C(a)(1)-(6).

9. *See Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex.1981).

10. Misapplication is defined as: "[t]he *improper or illegal* use of funds or property lawfully held." BLACK'S LAW DICTIONARY 1019 (8th ed.2004) (emphasis added).

ment;[11] accordingly, we give these terms a related meaning[12] and interpret them to authorize removal if the trial court believes the executor was engaged in subterfuge or wrongful misuse.[13] The evidence here shows that this dispute was, at bottom, a good-faith disagreement between John and Sandra as to how to split the value of the improvements between John and the estate. The record contains no evidence of dishonesty or misappropriation on John's part, much less enough evidence to conclude that Sandra proved misapplication or embezzlement as a matter of law. Accordingly, the trial court did not abuse its discretion in failing to remove John as independent executor on this basis.

## B. Subsection (5)—"Gross Misconduct or Gross Mismanagement"

■■ Sandra's second allegation is that John committed gross misconduct or gross mismanagement vis-a-vis his actual conflict of interest. In looking at the subsection, it is instructive that the Legislature did not use "misconduct or mismanagement" but rather "gross misconduct or gross mismanagement."[14] The use of the adjective "gross" indicates that something beyond ordinary misconduct and ordinary mismanagement is required to remove an independent executor. Gross is defined as "[g]laringly obvious; flagrant."[15] The question then we face today is whether a potential conflict of interest constitutes gross misconduct or gross mismanagement.

A half-century ago we addressed an independent executor's conflict of interest in a different setting. In *Boyles v. Gresham*, Boyles was named independent executor in Gresham's will.[16] But when Boyles applied for letters testamentary, Gresham's son contested the appointment because Boyles thought part of the money in the will should go to him and his sons.[17] In considering whether Boyles was unsuitable under Probate Code section 78, we acknowledged that "it was firmly established in Texas that a testator had wide latitude in the appointment of his independent executor."[18] Further, nothing in the Probate Code changed that principle.[19] In fact, in examining the Probate Code, we found the opposite was true. In particular, we looked at section 77, which listed the order of preference for those entitled to letters of administration.[20] Among those listed were creditors. As we noted, "[t]he creditor's interest is necessarily antagonistic to the distributees, to the estate."[21] It would be anomalous to say the Legislature specifically included someone entitled to letters of administration in one section only to deem them unsuitable in another.[22]

*Boyles* does not control our decision today. First, that case dealt with pre-

---

11. Embezzlement is defined as: "[t]he *fraudulent* taking of personal property with which one has been entrusted, esp. as a fiduciary." *Id.* 561 (emphasis added).

12. *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 174 n. 2 (Tex.1980).

13. *In re Estate of Casida*, 13 S.W.3d 519, 524–25 (Tex.App.-Beaumont 2000, no pet.).

14. Tex. Prob.Code § 149C(a)(5).

15. Am. Heritage College Dictionary 600 (3rd ed.2000).

16. 158 Tex. 158, 309 S.W.2d 50, 51 (1958).

17. *Id.* at 51.

18. *Id.* at 53.

19. *Id.*

20. *Id.*

21. *Id.*

22. *Id.*

appointment unsuitability and not post-appointment removal. Second, *Boyles* expressly left open the question of dis-qualification where "a named executor claims adversely, as his own, property which is owned ... by the estate."[23] However, while *Boyles* is not controlling, the same policy reasons that undergird *Boyles* inform our decision today. The Legislature has provided that creditors of the deceased can be granted letters of administration.[24] Such creditors, by their very nature, have a conflict of interest by virtue of a claim against estate assets. Similarly, it is common for testators in Texas to name spouses (or business partners) as independent executors. If we judicially amended section 149C by declaring a per se removal rule for "conflict of interest" whenever spouse-executors have a shared interest in community property, and issues arise over the separate or community character of estate assets, the surviving spouse could be ousted. While Sandra contends removal would only be justified when the executor has actually asserted a claim adverse to the estate, it seems under her theory that once a beneficiary objects to an executor's proposed valuation and distribution of property, the executor's defense would constitute a conflict of interest that mandates removal. Such a rule, besides having no statutory anchor in the text of section 149C, would undermine the ability of Texas testators to name their own independent executor and also weaken the ability of an executor "free of judicial supervision, to effect the distribution of an estate with a minimum of cost and delay."[25] And it would impose this extra-statutory restriction even if the testator was fully aware of the potential conflict when the executor was chosen.

■ A good-faith disagreement over the executor's ownership share in the estate is not enough, standing alone, to require removal under section 149C. The statute speaks of affirmative malfeasance, and an executor's mere assertion of a claim to estate property, or difference of opinion over the value of such property, does not warrant removal.[26] A potential conflict does not equal actual misconduct. The court of appeals here did not list any instances of John's misconduct or mismanagement, let alone any that could be labeled "gross," a modifier that implies serious and willful wrongdoing.

■ We recognize there may be scenarios where an executor's conflict of interest is so absolute as to constitute what the statute terms "gross misconduct or gross mismanagement." In deciding whether an executor's conflict amounts to "gross misconduct or gross mismanagement," trial courts should take into consideration several factors, including the size of the estate,[27] the degree of actual harm to the estate,[28] the executor's good faith in

---

23. *Id.* at 54.

24. *See* Tex. Prob.Code § 77(f).

25. *Corpus Christi Bank & Trust v. Alice Nat'l Bank*, 444 S.W.2d 632, 634 (Tex.1969).

26. Stanley M. Johanson, Johanson's Tex. Prob. Code Ann. § 149C cmt. at 225 (West 2008).

27. *See Street v. Skipper*, 887 S.W.2d 78, 83 (Tex.App.-Fort Worth 1994, writ denied) (upholding the removal of an independent executor for a conflict of interest when, under the executor's division, the estate would receive nearly $1 million less than what it should).

28. *See Geeslin v. McElhenney*, 788 S.W.2d 683, 685 (Tex.App.-Austin 1990, no writ) ("the statutory criteria of 'gross mismanagement' and 'gross misconduct' ... include at minimum ... any breach of fiduciary duty that results in actual harm to a beneficiary's interest") (emphasis omitted).

asserting a claim for estate property,[29] the testator's knowledge of the conflict,[30] and the executor's disclosure of the conflict.[31]

In this case, these factors cut squarely in John's favor: the estate was small; there was no actual harm to the estate since the trial court resolved the percentage-of-ownership issue; John asserted his claim in good faith; and James knew that his brother's co-ownership of estate property might later pose allocation/valuation issues when he named John independent executor.[32] As such, we cannot say that the trial court abused its discretion in failing to remove John as independent executor for gross misconduct or gross mismanagement.

### C. Subsection (6)—"Legally Incapacitated"

■ Sandra's third allegation is that John is legally incapacitated from performing as independent executor. This subsection, as we construe it, is inapplicable to an alleged conflict of interest. An incapacitated person is "[a] person who is impaired by an intoxicant, by mental illness or deficiency, or by physical illness or disability to the extent that personal decision-making is impossible."[33] A conflict of interest does not make it impossible for someone to

make decisions. Nor was John under any other legal incapacity that prevented him from carrying out his duties. Accordingly, the trial court did not abuse its discretion in failing to remove John as independent executor on this basis.

### III. Removal as Trustee

■ The second issue is whether the trial court erred in failing to remove John as trustee of the testamentary trust. The removal of a trustee is governed by Trust Code section 113.082. This section gives the trial court more leeway on removal than does the Probate Code, as its four grounds are not as narrow. In fact, in one subsection, the statute allows that "a court may, in its discretion, remove a trustee . . . if . . . the court finds other cause for removal."[34] While the statute for removal of an independent executor is different from the statute for removal of a trustee, the fiduciary duties owed by both are similar.[35] Given the similarities in the type of duties owed and the level of discretion given a trial court by the statute, we cannot say the trial court abused its discretion in not removing John as trustee when, viewing the same conduct, it was not error to keep him as independent executor.

> When he executed the 2004 Will, Decedent James Kappus knew the issues involving allocation and valuation of the improvements to the 49.482 acre tract because he had himself litigated those issues with Applicant Sandra L. Kappus in the divorce just three months before he made the Will, and with that knowledge named his brother John Kappus independent executor.

---

**29.** *See In re Estate of Casida,* 13 S.W.3d 519, 524 (Tex.App.-Beaumont 2000, no pet.) (The grounds of removal alleged showed no bad faith, but rather a disagreement over the value of the property.).

**30.** *See In re Roy,* 249 S.W.3d 592, 596–97 (Tex.App.-Waco 2008, pet. denied) (holding that while a conflict of interest might not be enough to remove an independent executor, the failure to disclose that conflict was grounds for removal).

**31.** *Id.*

**32.** The trial court's findings of fact made this clear:

**33.** BLACK'S LAW DICTIONARY 775 (8th ed.2004).

**34.** TEX. PROP.CODE § 113.082(a)(4).

**35.** *Humane Soc'y of Austin & Travis County. v. Austin Nat'l Bank,* 531 S.W.2d 574, 577 (Tex.1975).

## IV. Conclusion

A good-faith disagreement between an executor and the estate over the percentage division and valuation of estate assets is not grounds for removal as a matter of law. Such a development would (1) depart from the specific grounds for removal listed in the statute, (2) frustrate the testator's choice of executor (particularly the common practice of appointing spouse-executors), and (3) impede the broader goal of supporting the independent administration of estates with minimal costs and court supervision. Accordingly, we reverse the court of appeals' judgment and reinstate the trial court's order denying the motion to remove John Kappus as independent executor and trustee.