

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-20-00220-CV

_____

IN THE ESTATE OF WILLIAM THOMPSON BELL, DECEASED

On Appeal from the County Court at Law
Walker County, Texas
Trial Court No. 9271PR; Honorable Tracy Sorensen, Presiding

September 15, 2021

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and DOSS, JJ.

Appellants, Sharon Hammond and Thomas Vincent Bell, appeal from the trial court's order removing them as co-executors of their father's estate and appointing a dependent administrator.[1] They challenge the order through two points, both alleging the trial court abused its discretion in removing them as co-executors without making

---

[1] Originally appealed to the Tenth Court of Appeals, sitting in Waco, this appeal was transferred to this court by the Texas Supreme Court pursuant to its docket equalization efforts. TEX. GOV'T CODE ANN. § 73.001. Should a conflict exist between precedent of the Tenth Court of Appeals and this court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court. TEX. R. APP. P. 41.3.

necessary findings and in removing them based on a motion to show cause that did not seek their removal as the co-executors. We will reverse the trial court's order and remand for further proceedings consistent with the opinion herein.

**BACKGROUND**

Decedent, William Thompson Bell, died on July 28, 2017. Bell was the founder and majority shareholder of WTBI, a Texas corporation. During his professional life, Bell accumulated a significant estate valued in excess of $12.5 million. He also secured over fifty patents, many held in his own name. At the time of his death, interests in those patents constituted a significant but unvalued asset that belonged to his estate.

Bell was survived by three of his five children, Sharon Hammond, Thomas Vincent Bell, and Elaine Bell. Bell's will and codicil provided extensive guidance for the administration of his estate. Bell's estate plan generally provided that his property, including his shares in WTBI, should be distributed in equal shares amongst his children. Bell's codicil divides his WTBI stock shares amongst his children and his ex-wife, and also gives sixty shares of stock to a longtime friend and business partner.

Elaine initiated the probate proceeding on October 17, 2017, when she filed her application to admit Bell's will and first codicil into probate. She requested that the trial court appoint Sharon and Vincent to serve as co-executors as set forth in the will. The trial court admitted the will and codicil into probate and appointed Sharon and Vincent as co-executors on November 20, 2017. They qualified as co-executors that day.

Sharon and Vincent began administering the estate but quickly encountered difficulties collecting information regarding Bell's WTBI stock and patents. They filed

2

several motions requesting more time to complete the inventory of Bell's estate, partly due to pending litigation between WTBI and Hunting Titan Ltd./Hunting Titan, Inc. regarding patent rights that was hindering their ability to secure information required to value the patent assets.[2] The trial court extended the deadline to file the inventory to July 15, 2020.

On January 23, 2020, Elaine, Bonnie Bell, Scott Berter, and Joseph Brasic (beneficiaries)[3] filed a petition requesting the removal of Sharon and Vincent as co-executors of Bell's estate. The beneficiaries objected to Sharon and Vincent's attempts to recover Bell's interests in the patents and in securing a proper valuation of Bell's interests in WTBI stock. They expressed a desire to quickly sell their shares of stock under the terms of the shareholder agreement and they objected to Sharon and Vincent's efforts to obtain WTBI's financial information to determine a fair purchase price for WTBI's stock. The beneficiaries complained that the estate had been pending for more than two years and that the estate's shares of WTBI stock were not sold to James Rairigh, the self-appointed president of WTBI.

Sharon and Vincent filed their original answer and asserted specific denials, affirmative defenses, and special exceptions to the petition. They also contested the sufficiency of the grounds and the legal standards supporting removal and defended the fees incurred in collection WTBI's financial records, arguing for the necessity of collecting that information to obtain a proper valuation of the estate's interests in WTBI.

---

[2] This litigation began three years before Bell's death and concluded two years after his death.

[3] These individuals were beneficiaries of Bell's estate.

On May 18, 2020, the beneficiaries filed a motion to show cause, asking the trial court to compel Sharon and Vincent to prepare and file the estate's inventory. A hearing on the motion was held on June 12, 2020. On June 16, 2020, the trial court issued the *Order Removing Independent Co-Executors and Appointing Successor Dependent Administrator.* That order reads, in part, as follows:

> The Court heard evidence and found that the Respondents were personally served with citation; that the Movants are persons interested in the Estate; that Respondents' ~~grossly~~ excessive spending of estate assets constitutes ~~gross~~ mismanagement; ~~and that Respondents failed to file an inventory pursuant to Sections 308.004(b), 309.051 and 361.052(a)(2) of the Texas Estates Code~~.

(Cross-outs contained in original).

Thus, the only finding in the court's order was that Sharon and Vincent's "excessive spending of estate assets constitutes mismanagement." Through this appeal, Sharon and Vincent seek reinstatement of their positions as co-executors of Bell's estate.

### STANDARD OF REVIEW

We review a trial court's decision to remove an executor under an abuse of discretion standard. *In re Estate of Clark*, 198 S.W.3d 273 275 (Tex. App.—Dallas 2006, pet. denied); *Lee v. Lee*, 47 S.W.3d 767, 786 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). A trial court abuses its discretion if its decision is arbitrary, unreasonable, and without reference to any guiding rules and principles. *Lee*, 47 S.W.3d at 786 (citing *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997)).

4

**ISSUE ONE—ABUSE OF DISCRETION IN REMOVING CO-EXECUTORS WITHOUT MAKING NECESSARY FINDINGS**

Via their first issue, Sharon and Vincent argue the trial court abused its discretion when it removed them without making necessary findings that they grossly mismanaged or grossly misused the estate's assets.

Sections 404.003 and 404.0035 of the Texas Estates Code set forth the reasons an independent executor may be removed. Those provisions provide as follows:

> The probate court, on the court's own motion or on the motion of any interested person, and without notice, may remove an independent executor appointed under this subtitle when:
>
> (1) the independent executor cannot be served with notice or other processes because:
>
> > (A) the independent executor's whereabouts are unknown;
> >
> > (B) the independent executor is eluding service; or
> >
> > (C) the independent executor is a nonresident of this state without a designated resident agent; or
>
> (2) sufficient grounds appear to support a belief that the independent executor has misapplied or embezzled, or is about to misapply or embezzle, all or part of the property committed to the independent executor's care.

TEX. ESTATES CODE ANN. § 404.003.

> (b) The probate court, on its own motion or on motion of any interested person, after the independent executor has been cited by personal service to answer at a time and place set in the notice, may remove an independent executor when:
>
> (1) the independent executor fails to make an accounting which is required by law to be made;
>
> (2) the independent executor is proved to have been guilty of gross misconduct or gross mismanagement in the performance of the independent executor's duties;

5

(3) the independent executor becomes an incapacitated person, or is sentenced to the penitentiary, or from any other cause becomes legally incapacitated from properly performing the independent executor's fiduciary duties; or

(4) the independent executor becomes incapable of properly performing the independent executor's fiduciary duties due to a material conflict of interest.

TEX. ESTATES CODE ANN. § 404.0035.

Courts have previously held that "gross misconduct" and "gross mismanagement" included, at a minimum: (1) any willful omission to perform a legal duty; (2) any intentional commission of a wrongful act; and (3) any breach of a fiduciary duty that results in actual harm to a beneficiary's interests. *In the Estate of Miller*, 243 S.W.3d 831, 840-41 (Tex. App.—Dallas 2008, no pet.) (citing *Sammons v. Elder,* 940 S.W.2d 276, 283 (Tex. App.—Waco 1997, writ denied)). However, in *Kappus v. Kappus*, the Supreme Court set forth an apparently less strict standard, stating the use of the adjective "gross," which means "glaringly obvious" or "flagrant," indicates that "something beyond ordinary misconduct and ordinary mismanagement is required to remove an independent executor." *In re Estate of Jones*, Nos. 13-11-00664-CV, 13-11-00692-CV, 2012 Tex. App. LEXIS 7423, at *12 (Tex. App.—Corpus Christi Aug. 27, 2012, no pet.) (mem. op.) (citing *Kappus v. Kappus*, 284 S.W.3d 831, 836 (Tex. 2009)).

Sharon and Vincent argue that the beneficiaries asked the trial court to make findings that they failed to provide an inventory pursuant to sections 308.004(b), 309.015, and 361.052(a)(2) of the Texas Estates Code and that they grossly mismanaged the estate's property. However, the trial court struck the language in the *Order* pertaining to both of those findings. Consequently, the only finding in the court's order was that Sharon

6

and Vincent's "excessive spending of estate assets constitutes mismanagement." Sharon and Vincent contend this shows the trial court made the "opposite findings" and thus, they should not have been removed as co-executors of Bell's estate. Moreover, they assert that even though the trial court found they mismanaged the estate's assets through excessive spending, this finding was an impermissible basis on which to remove them as co-executors.

Sharon and Vincent argue on appeal that the "true reason the Co-Executors were removed was the trial court's expressed concern that it could be personally liable for waste of the Estate's assets." They note the trial court "repeatedly expressed this concern before and after the show cause hearing, and declared its preference to appoint a third party to administer the Estate." The trial court stated that it believed it was better to "get an independent third party to get involved and actually get things done, whether people want it done or not." This, Sharon and Vincent argue, is not a legally permissible basis for their removal under either section 404.003 or 404.0035 of the Texas Estates Code.

The beneficiaries disagree, arguing that the evidence before the trial court included expenditures by Sharon and Vincent of over $180,000.00 over a span of nine months, just in attorney's fees for one attorney. They argue that such expenditures are unnecessary in most cases, especially one like this which was an uncontested estate administration. They questioned also Sharon and Vincent's payment of $375,000.00 in tax liability after retaining H&R Block instead of a certified public accountant. Further, the beneficiaries allege that Sharon and Vincent "showed a pattern of a lack of complete transparency" when they "arbitrarily redacted check images" for the estate's December 31, 2019 bank account statement while leaving other check images unredacted.

7

While Sharon and Vincent argue that the trial court made findings against gross mismanagement when it struck the language in the *Order* as set forth above, the beneficiaries argue that the trial court's finding that their "excessive spending of estate assets constitutes mismanagement" clearly indicates a breach of Sharon and Vincent's fiduciary duties to the estate that resulted in actual harm to the beneficiaries' interests. That finding, they assert, is a finding of gross mismanagement under Texas case and statutory law even if the word "gross" was not used or included in the written order.

The beneficiaries argue that ample evidence existed to support the trial court's removal of Sharon and Vincent as co-executors. They note that nearly three years had passed since Bell died and two and a half years since Sharon and Vincent were appointed as co-executors. Further, Sharon and Vincent were granted five extensions to file the inventory for the estate. Despite these extensions, only an interim inventory had been filed and that inventory was not approved by the trial court. The beneficiaries also point out the trial court's concern over leaving them as co-executors to oversee a sizeable estate when little had been accomplished in the previous two and a half years. The court noted Bell would not have executed a nineteen-page will and codicils and "would not have continued to try to make sure his estate was taken care of if he knew someone was going to get appointed and then sit on it for three years." Lastly, the beneficiaries note the testimony of Sharon and Vincent. Sharon testified she had been signing documents without reading them and Vincent suffered a brain injury and had some difficulty in answering certain questions. All of this, the beneficiaries contend, raised red flags for the trial court and constituted sufficient evidence for removal of Sharon and Vincent as co-executors of Bell's estate.

In their reply brief, Sharon and Vincent argue that the trial court abused its discretion when it removed them as co-executors of Bell's estate for alleged "excessive spending" because that is not a proper ground for removal and that such spending cannot constitute gross mismanagement *per se* as asserted by the beneficiaries. They re-urge their argument that by striking certain language in the *Order*, the trial court "made findings that Co-Executors did not grossly mismanage the Estate's assets." They contend also that no such finding can be imputed. Sharon and Vincent argue that the beneficiaries' reliance on *In re Estate of Miller*, 243 S.W.3d at 840-41, for that proposition is inapposite to the facts of this case.

In *In re Estate of Miller*, the court ordered the removal of the independent executor for gross mismanagement and entered findings of fact noting that the delay in the administration and closing of the estate constituted gross mismanagement of the affairs of the estate. *In re Estate of Miller*, 243 S.W.3d at 841, n.2. Sharon and Vincent argue that no such findings were made here and further that the trial court struck all language in the *Order* pertaining to gross mismanagement. They note also that the beneficiaries did not allege any breach of fiduciary duty in their *Motion to Show Cause* or in any other pleading before the trial court. Consequently, the beneficiaries failed to meet their burden for removal under sections 404.003 or 404.0035 of the Texas Estates Code and the trial court erred in entering the *Order* removing Sharon and Vincent as co-executors.

Based on the language of the trial court's order, the only finding it made was that Sharon and Vincent's "excessive spending of estate assets constitutes mismanagement." It clearly did not find their actions to be "gross." Nor did it make any findings regarding the adequacy or lack of an inventory. Thus, we are left with determining whether there

9

were sufficient grounds to support a belief that Sharon and Vincent misapplied all or part of the property committed to their care. TEX. ESTATES CODE ANN. § 404.003(2). We agree with the beneficiaries and with the trial court that Sharon and Vincent spent significant funds from the estate paying attorneys for investigation that might not be relevant. We agree also that Sharon and Vincent have done little to administer the estate in the years in which they have been appointed. However, because under *Kappus*, any ground supporting removal must be "glaringly obvious" or "flagrant" and "something beyond ordinary misconduct and ordinary mismanagement" must be shown to support removal of an independent co-executor, we cannot find that burden was met here. *Kappus*, 284 S.W.3d at 836. We sustain Sharon and Vincent's first issue.

### ISSUE TWO—ABUSE OF DISCRETION IN REMOVING CO-EXECUTORS IN RESPONSE TO MOTION TO SHOW CAUSE

In their second issue, Sharon and Vincent contend the trial court abused its discretion when it removed them in response to a motion to show cause that did not request their removal and therefore granted relief in excess of the parties' pleadings. They argue that the basis for the show cause hearing was a contention that Sharon and Vincent had failed to produce an inventory. The motion to show cause did not request the removal of Sharon and Vincent as co-executors of Bell's estate and therefore, they assert, the trial court abused its discretion in removing them. In their reply brief, Sharon and Vincent distinguish the case relied on by the beneficiaries, *In re Estate of Washington*, 262 S.W.3d 903, 906-07 (Tex. App.—Texarkana 2008, no pet.), arguing that the case "merely affirmed that a court can remove an executor for failing to make an accounting and did not address the removal of an executor for gross mismanagement." They again argue that the finding made by the trial court was that "[Co-Executors'] spending of estate

10

assets constitutes mismanagement" and that this finding was insufficient for removal under the applicable statutes, irrespective of whether that removal was on motion of the beneficiaries or *sua sponte* by the trial court.

The motion to show cause in the record states as the basis for relief the failure of Sharon and Vincent to file an inventory.[4]  While we agree that the record indicates they did file an interim inventory in advance of the extended deadline in which to do so, we find that the trial court was within its power, on its own motion and authority, to remove them as co-executors if the proper grounds were supported.  *See* TEX. ESTATES CODE ANN. §§ 404.003; 404.0035; *In re Estate of Washington*, 262 S.W.3d at 906.  As such, we cannot agree with Sharon and Vincent's argument that the trial court granted relief in excess of the beneficiaries' pleadings.  Accordingly, we overrule their second issue.

### CONCLUSION

We reverse the trial court's order removing Sharon and Vincent as co-executors of Bell's estate and remand for further proceedings.

Patrick A. Pirtle
Justice

---

[4] We also acknowledge that the motion cited sections 308.004(b), 309.051, and 361.052(a)(2) of the Texas Estates Code.  Those sections apply to dependent administrators rather than independent executors such as Sharon and Vincent.  Nevertheless, we find the record indicates Sharon and Vincent filed an interim inventory on May 26, 2020, in advance of the extended July 15, 2020 deadline.

11