**Jennifer PINE and Robin Pine, Appellants,**

**v.**

**Catherine DEBLIEUX, Individually and as Successor Administrator of the Estate of Robert Edward Pine, Deceased, Appellee.**

No. 01–10–00411–CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 14, 2011.

Rehearing Overruled Feb. 13, 2012.

---

Jerry S. Payne, Houston, TX, for Appellants.

Vicki Whitlow Thomas, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices SHARP and BROWN.

## OPINION

SHERRY RADACK, Chief Justice.

This case involves a challenge to appellee Catherine deBlieux's appointment as the Successor Independent Administrator of her father's probate estate. We reverse the trial court's judgment and remand for further proceedings.

## BACKGROUND

Robert Pine died intestate on March 15, 2008. He had four children: Jennifer Pine, Robin Pine–Sims, Mark Pine, and deBlieux. All three sisters initially agreed to Mark's appointment as Independent Administrator, without bond, of the decedent's estate on February 25, 2009.

On June 5, 2009, deBlieux filed a Petition for Declaratory Judgment, claiming, among other things, that certain assets owned by the decedent are hers individually. Specifically, she claims contractual survivorship rights in a Certificate of Deposit and in a Trust created by her father.

In Spring 2010, Mark's three sisters filed motions alleging Mark breached his fiduciary duties and embezzled money from the estate. They all three requested that Mark be removed as Independent Administrator. Mark expressed a willingness to voluntarily resign before the hearing was held on the motions.

### A. Motions for the Appointment of a Successor Administrator

In a motion filed March 10, 2010, deBlieux requested that she be appointed as the Successor Administrator to replace Mark. Jennifer and Robin opposed deBlieux's application, alleging conflicts of interest:

> deBlieux does not qualify and should not be appointed Successor Administrator since she has a conflict of interest; she claims a large portion of the property owned by the Decedent prior to his death is not the property of the estate but rather her property; that the Administrator is required to protect the estate from claims against the assets of the estate.

Jennifer and Robin instead requested that Robin be appointed Successor Administrator. They later filed a motion requesting that both Jennifer and Robin be appointed Joint Successor Administrators.

### B. The Trial Court's Orders

■ Following an April 30, 2010 hearing, the trial court entered an order on May 3, 2010 accepting Mark's resignation and appointing deBlieux as Successor Administrator with a $500,000 bond. Jennifer and Robin filed a notice of appeal.[1] They also filed a Motion to Reconsider

---

1. An order settling someone's rights as an executor is generally a final, appealable order. *E.g., In re Estate of Vigen,* 970 S.W.2d 597, 599 (Tex.App.-Corpus Christi 1998, no pet.).

Appointment of Successor Administrator arguing that deBlieux's conflict of interest rendered her unsuitable as a matter of law under section 78(e) of the Texas Probate Code. The trial court denied the motion.

### C. deBlieux's Motion for Summary Judgment

On May 17, 2010, deBlieux filed a motion for summary judgment on her declaratory judgment action seeking a ruling as to what property of the testator's was subject to probate. In that motion, she argued that Mark (while acting as administrator) improperly omitted several items from the inventory he filed with the court. She also argued that, as a matter of law, a Certificate of Deposit and certain trust assets passed to her outside of the probate as a payable-on-death beneficiary.

No response to this motion was filed by the estate, as deBlieux was also serving as the estate administrator. Jennifer and Robin filed an opposition to this summary judgment, again asking the court to reconsider deBlieux's suitability because, they asserted, deBlieux has abandoned the estate by claiming 40% of the testator's assets as her own while refusing to hire legal counsel to defend the estate against her claims. They also argued that all four children knew that their father used numerous trusts and property transfers to his children's name to keep assets out of his name with the understanding that he intended to still own the property. No order on deBlieux's motion is located in the record.

### APPLICABLE LAW

The Texas Probate Code provides the following priority to qualified persons in the appointment of an administrator:

(a) To the person named as executor in the will of the deceased.

(b) To the surviving husband or wife.

(c) To the principal devisee or legatee of the testator.

(d) To any devisee or legatee of the testator.

(e) To the next of kin of the deceased, the nearest in order of descent first, and so on, and next of kin includes a person and his descendants who legally adopted the deceased or who have been legally adopted by the deceased.

(f) To a creditor of the deceased.

(g) To any person of good character residing in the county who applies therefor.

(h) To any other person not disqualified under the following Section. When applicants are equally entitled, letters shall be granted to the applicant who, in the judgment of the court, is most likely to administer the estate advantageously, or they may be granted to any two or more of such applicants.

TEX. PROBATE CODE ANN. § 77 (Vernon 2003).

The probate code also deems certain persons statutorily disqualified to serve as an executor, including a "person whom the court finds unsuitable." TEX. PROBATE CODE ANN. § 78(e) (Vernon 2003). This category, unsuitability, is at issue in this case.

■ The trial court is given broad discretion in determining whether an individual is suitable to serve as an executor or administrator. *Kay v. Sandler*, 704 S.W.2d 430, 433 (Tex.App.-Houston [14th Dist.] 1985, writ ref'd n.r.e.); *Dean v. Getz*, 970 S.W.2d 629, 633 (Tex.App.-Tyler 1998, no pet.). We will not overturn a trial court's determination of an administrator's suitability absent an abuse of that discretion. *Olguin v. Jungman*, 931 S.W.2d 607, 610 (Tex.App.-San Antonio 1996, no writ).

## ANALYSIS

In their sole point of error, appellants Jennifer and Robin contend that the trial court abused its discretion by appointing deBlieux as administrator of Pine's estate because, they allege, she has an active conflict of interest that renders her unsuitable as a matter of law. In support, they assert that the "courts have consistently held that an applicant for Administrator who claims ownership of assets of the estate, to the exclusion of the estate, is 'unsuitable,' pursuant to section 78(e), because of a conflict of interest between the interest of the applicant and the interest of the estate."

In response, deBlieux concedes that "recent court of appeals cases have ... held a conflict of interest [constitutes] automatic grounds for disqualification." Nonetheless, she argues that the "authority of these cases has been undercut, and deservedly so, by the Supreme Court's decision in *Kappus v. Kappus,* 284 S.W.3d 831 (Tex.2009)." While deBlieux acknowledges that Kappus involved "the attempted removal, rather that the initial appointment of an independent executor," she asserts that "the court's reasoning should apply with equal force" to "curtail a disturbing trend, in recent court of appeals cases" finding a "conflict of interest as a basis for the denial of appointment or the removal of a personal representative."

We agree with Jennifer and Robin that the conflict of interest created by deBlieux's separate claim to a substantial portion of her father's assets rendered her unsuitable as a matter of law. Accordingly, we reverse the trial court's order appointing her as independent administrator.

### A. Relevant Cases

It is settled that an individual claiming under the will or asserting a claim in probate against the estate is not unsuitable merely because of that claim. *Boyles v. Gresham,* 158 Tex. 158, 309 S.W.2d 50, 54 (Tex.1958). In *Boyles,* the supreme court squarely resolved this issue, concluding that "as a matter of law, an independent executor named in a will is not unsuitable simply by virtue of his having a claim against the estate which he asserts in good faith or because, on advice of counsel, he claims as a beneficiary, or as trustee, under the will." *Id.* In holding that a testator's chosen executor was not automatically disqualified merely by virtue of being a potential beneficiary and/or creditor under the will, the court heeded both the well-fixed "power and right of a testator to select [his or her] own independent executor," and the general preference—reflected by the statutory scheme for selecting administrators in section 77 of the Probate Code—for those with the greatest interest in an estate to enjoy priority in selection of an administrator. *Id.* at 53.

The *Boyles* court was, however, careful to limit its holding to cases in which the independent executor was named by the testator and whose interest arises only as a beneficiary or creditor, expressly leaving consideration of the situation presented in this case for another day:

We do not have before us a situation in which a named executor claims adversely, as his own, property which is owned, claimed or should be claimed, by the estate. For example, conceivably the testator may own or claim to own a building, and he may make a certain disposition of it to a third party. The named executor may also claim it as his own, regardless of, or in spite of, the will and estate of the testator. These assumed facts are not before us.

In the case before us [the executor] did not claim any of [the testator's]

property as his own. His claim, if any, was not adverse to the estate but was under the will or by virtue of a claim as creditor of the estate.

*Id.* at 54.

Both before and since *Boyles* was decided, the suitability of an executor or administrator claiming title to property owned by the testator at the time of death has been addressed by several courts of appeals, which have concluded that the conflict of interest inherent in this situation establishes unsuitability as a matter of law. *See, e.g., Bays v. Jordan,* 622 S.W.2d 148, 149 (Tex. App.-Fort Worth 1981, no writ); *Haynes v. Clanton,* 257 S.W.2d 789, 792 (Tex.Civ.App.-El Paso 1953, writ dism'd by agr.). The distinction between these cases and *Boyles* lies in the fact that that a beneficiary, creditor, or claimant does not dispute the estate's title, but rather— through the probate process—seeks satisfaction of his or her claim from the estate's assets. In contrast, persons claiming disputed assets as their own to the exclusion of an estate are denying the estate's title, arguing instead that the assets are not subject to probate proceedings at all. *See Bays,* 622 S.W.2d at 149.

These courts of appeals' decisions are based on the premise that, when an administrator or executor claims title to property owned by the testator at the time of death, the interest of the estate and that administrator or executor are too adverse for that one person to advocate effectively for both sides. *See Ayala v. Martinez,* 883 S.W.2d 270, 272 (Tex.App.-Corpus Christi 1994, writ denied) (recognizing that surviving spouse was unsuitable to administer deceased husband's estate because she claimed property from her deceased husband's separate estate as community property); *Bays,* 622 S.W.2d at 148–49 (holding the trial court abused its discretion by granting letters testamentary to a joint venturer with the decedent who claimed substantially all of the estate's assets by virtue of a written agreement with the testator creating rights of survivorship in their joint ventures); *Hitt v. Dumitrov,* 598 S.W.2d 355, 355–56 (Tex.Civ.App.-Houston [14th Dist.] 1980, no writ) (affirming trial court's disqualification of person from administrating wife's estate because the estates of husband and his wife, who died together in a plane crash, had adverse claims to the same insurance proceeds such that the administrator could not advocate for both estates against each other effectively); Haynes, 257 S.W.2d at 790, 792 (affirming trial court's determination that administrator was unsuitable because he owned an interest in a bank that had sued the estate to recover all of the assets of the estate that the bank alleged were purchased with money embezzled from the bank).

deBlieux acknowledges that this authority is contrary to her position. She asserts, however, that the supreme court's 2009 decision in *Kappus v. Kappus* evidenced its disapproval of this line of cases. In *Kappus,* the supreme court considered "whether an independent executor's alleged conflict of interest—... a good-faith dispute over the executor's percentage ownership of estate assets—requires his removal as a matter of law." 284 S.W.3d at 833. At issue was whether the testator's brother, who was named as independent executor in the testator's will and who was appointed with no objection, must be removed when the testator's ex-wife objected to the executor's proposed division of proceeds from the sale of land jointly owned by the testator and his brother, the executor. *Id.* at 834. The testator's ex-wife complained on her children's behalf about a plan to divide the proceeds from the property sale equally between the estate and executor, because she believed

the estate was due more than 50% to compensate for some improvements the testator had paid for. *Id.*

The testator's ex-wife requested that the executor be removed under section 149 C of the Texas Probate Code, which mandates removal of an executor "proved to have been guilty of gross misconduct or gross mismanagement in the performance of [his or her] duties" or to have "misapplied or embezzled ... property committed to [his or her] care." TEX. PROB.CODE ANN. § 149C(a)(2) & (5) (Vernon Supp. 2010). The trial court refused the request, but the appellate court reversed, holding that the executor's shared interest in property with the estate created an improper conflict of interest. *Kappus,* 284 S.W.3d at 834. The supreme court reversed that decision, holding instead that the trial court's refusal to remove the testator was within its discretion. *Id.* at 836–39. The court noted that the testator's ability to select his own executor is "well fixed in the Texas law," that there exists only six grounds for removal under section 149C(a), and that once a ground has been proven, the "trial court has discretion to decide whether the violation warrants removal." *Id.* at 834–35. The court further emphasized that "the grounds to *remove* an independent executor post-appointment are different from those to *disqualify* an executor *pre*-appointment." *Id.* at 835 (noting that the more expansive "unsuitable" catch-all standard governing appointment does not apply to removal, which is limited to the six enumerated reasons in section 149C). The court distinguished its earlier decision in Boyles on that ground. *Id.* at 836–37 ("Boyles does not control our decision today.").

The supreme court noted that not all conflicts are disqualifying, as demonstrated by the legislature's providing that "creditors of the deceased can be granted letters of administration." *Id.* at 837. And the court expressed a reluctance to judicially amend section 149C in a way that would oust a surviving spouse specifically chosen as an independent executor in the testator's will based on an alleged conflict of interest any time there is a shared interest in community property:

[I]t seems under [petitioner's] theory that once a beneficiary objects to an executor's proposed valuation and distribution of property, the executor's defense would constitute a conflict of interest that mandates removal. Such a rule, besides having no statutory anchor in the text of section 149C, would undermine the ability of Texas testators to name their own independent executor and also weaken the ability of an executor "free of judicial supervision, to effect the distribution on an estate with a minimum of cost and delay." And it would impose this extra-statutory restriction even if the testator was fully aware of the potential conflict when the executor was chosen.

*Id.* (footnote omitted). Thus, the court concluded, a "good-faith disagreement over the executor's ownership share in the estate is not enough, standing alone, to require removal under section 149C," a statute that "speaks of affirmative malfeasance." *Id.* ("A potential conflict does not equal actual misconduct.").

**B. Application**

We disagree that *Kappus* is controlling here. We are mindful that the *Kappus* court cautioned against disqualifying the testator's chosen executor when a minor potential conflict arises, as that result cannot be squared with the intent of the legislature when framing the criteria for appointing an administrator or executor, or with its criteria for removing an existing one. That is not, however, the situation we are faced with today. deBlieux was not

selected by Pine, who died intestate. The statute governing her appointment as an administrator contains a more expansive disqualification standard, i.e., unsuitability, than the removal statute in *Kappus* that the court interpreted as requiring malfeasance. Given these differences, the policy considerations at work in *Kappus* are not applicable here.

In this case, there exists a real dispute over the validity of deBlieux's individual claims to ownership of substantial assets of her father's such that her "personal interests are so adverse to those of the estate [and] the beneficiaries ... that both cannot be fairly represented by the same person." *Bays*, 622 S.W.2d at 149 (quoting *Haynes*, 257 S.W.2d at 792). Accordingly, we sustain Jennifer's and Robin's point of error and hold that the deBlieux's nontestamentary claims to property owned by Pine upon his death render her unsuitable as a matter of law to serve as administrator. The trial court thus abused its discretion in appointing her as such. In so holding, we express no opinion as to who should serve as her successor.

## CONCLUSION

We reverse the trial court's order appointing deBlieux as independent administrator of Pine's estate and remand for further proceedings.