

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-11-00030-CV

_____

IN THE ESTATE OF IMOGENE GOBER, DECEASED

On Appeal from the County Court at Law
Hopkins County, Texas
Trial Court No. P10-13355

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

OPINION

Imogene Gober's last will and testament names her son, Joe Mack Gober, and daughter, Sue Nan Gober, as "Co-Independent Executors" of her estate. The will also devised the estate to Joe and Sue in equal shares. Due to "personality conflicts" between Joe and Sue, Joe "voluntarily agreed to step aside," and alleged that Sue was unsuitable to serve as independent executrix. After hearing evidence, the trial court found Sue unsuitable and appointed a third party G. V. Hughes, as independent executor of the estate.[1] Sue appeals,[2] alleging that the trial court erred in finding her unsuitable to serve as independent executrix of her mother's estate due to alleged conflicts of interest. We agree with Sue, reverse the trial court's judgment, and remand for further proceedings in accordance with our opinion.

## I.     STANDARD OF REVIEW

"The power and right of a testator to select his own independent executor" is "well fixed in the Texas law." *Boyles v. Gresham*, 309 S.W.2d 50, 53 (Tex. 1958). The Texas Probate Code

---

[1]In the first order, the court appointed G. V. Hughes as "independent executor." After the new trial motion hearing, the court appointed G. V. Hughes as "executor." Hughes was not appointed in the will as an executor, nor is there any evidence that all distributees under the will agreed for such appointment. TEX. PROB. CODE ANN. §§ 154(a), 145(d) (West 2003). Unless one of those circumstances is present, even if the independent executor designated by the will is unwilling to serve, the probate court is powerless to appoint an independent executor. Rather, the court "may appoint an administrator only under the general law." *Boone v. LeGalley*, 29 S.W.3d 614, 616 (Tex. App. —Waco 2000, no pet.) (citations omitted).

We note that since his appointment, Hughes has applied to the court for approval of all actions with regard to the estate and has essentially treated the appointment as dependent administration. We will construe the order to appoint Hughes as the administrator of the estate.

[2]"The right to serve as the executor of an estate is a 'substantial right' and a denial of that right is a final and appealable order." *In re Estate of Boren*, 268 S.W.3d 841, 845 (Tex. App.—Texarkana 2008, pet. denied) (citing *In re Estate of Vigen*, 970 S.W.2d 597, 599 (Tex. App.—Corpus Christi 1998, no pet.)).

2

gives first priority of appointment of an administrator to the person(s) named as executor(s) in the will of the deceased. TEX. PROB. CODE ANN. § 77 (West 2003). However, one is statutorily disqualified from serving as an executor of an estate if that person is "[a] person whom the court finds unsuitable." TEX. PROB. CODE ANN. § 78(e) (West 2003).

The term "unsuitable" is not defined in the Texas Probate Code, leaving the "implication that the trial court has discretion in making that determination." *Boren*, 268 S.W.3d at 846 (citing *In re Estate of Foster*, 3 S.W.3d 49, 55 (Tex. App.—Amarillo 1999, no pet.) ("[T]he cases considering the provision do not establish a 'bright line' test to be applied in making that determination.")). "Such discretion is not unbridled, however, and its exercise is subject to review for abuse." *Guyton v. Monteau*, 332 S.W.3d 687, 690 (Tex. App.—Houston [14th Dist.] 2011, no pet.). Therefore, we review the trial court's determination that Sue was unsuitable to serve as executrix of her mother's estate for abuse of discretion. *Id.*

The trial court abuses its discretion if its determination that the applicant is unsuitable is arbitrary or unreasonable. *Boren*, 268 S.W.3d at 846. The mere fact a trial court may decide a matter within its discretionary authority in a different manner than an appellate court in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Id.* (citing *Downer v. Aquamarine Operators*, *Inc.*, 701 S.W.2d 238, 242 (Tex. 1985)). We make an independent inquiry of the entire record and are not limited to reviewing the sufficiency of the evidence to

3

support the findings of fact made, to determine if the trial court abused its discretion. *Id.* at 846–47 (citing *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 853 (Tex. 1992) (orig. proceeding)).

## II.    REVIEW OF THE RECORD

### A.    Trial Testimony

Joe testified that he and Sue "don't agree on anything," "don't trust each other at all," and "will never agree." He added, "[t]he estate will never be settled while there's two of us." Joe claimed that Sue was living in the house owned by the estate "rent-free," that Sue "won't pay any of the [utility] bills," would not allow him to drive a vehicle owned by the estate, paid the housekeeper with the estate's money, and attempted to sell the house as if it belonged to her after Joe expressed that he did not want to sell the house.

Sue confirmed that she was living in the home owned by the estate. She also testified that after her mother's death, Joe "was driving the [estate's] vehicle without [her] permission." Yet, at all times, Sue maintained that the home and car were assets of the estate.

Hughes testified that he did not believe Joe and Sue could get along. He confirmed that utility bills for energy consumed by Sue while living in the estate home were "being debited against the [estate's] account."

### B.    The Trial Court's Findings

The trial court's findings of fact specify that: (1) Sue "resides in the house . . . which belongs to the Estate and the Estate was paying all of the utility bills until G.V. Hughes was first

4

appointed;" (2) Sue "desires to continue to live in the home . . . without compensation or benefit to the Estate;" (3) Joe and Sue "have personality conflicts which would prevent them from serving as Co-Executors of the Estate;" and (6) "there is a lack of trust between Joe Mack Gober and Sue Nan Gober which makes it impossible for either to serve as Executor." Based upon these findings, the court concluded that Sue was unsuitable to serve as executrix because she "ha[d] a direct conflict between her personal interest and the best interest of the Estate" and could not serve as co-executor with Joe "due to their personality conflicts."

## III. RECORD DID NOT SUPPORT FINDING THAT SUE WAS UNSUITABLE

### A. There Was No Evidence of Conflict of Interest

Joe argues that the trial court's finding of direct conflict should be upheld. "[T]he suitability of an executor . . . claiming title to property owned by the testator at the time of death has been addressed by several courts of appeals," which have concluded that a conflict of interest in this situation "establish[ed] unsuitability as a matter of law." *Pine v. Deblieux*, No. 01-10-00411-CV, 2011 WL 2732570, at *4 (Tex. App.—Houston [1st Dist.] July 14, 2011, no pet. h.); *see Olguin v. Jungman*, 931 S.W.2d 607, 610 (Tex. App.—San Antonio 1996, no writ) ("a person asserting a claim against property, claiming it as their own to the exclusion of the estate, is deemed unsuitable because of the conflict"). This is because "the interest of the estate and that administrator or executor are too adverse for that one person to advocate effectively for both sides." *Pine*, 2011 WL 2732570, at *4 (citing *Ayala v. Martinez*, 883 S.W.2d 270, 272 (Tex.

5

App.—Corpus Christi 1994, writ denied); *Bays v. Jordan*, 622 S.W.2d 148, 149 (Tex. App.—Fort Worth 1981, no writ) ("Clearly, one whose personal interests are so adverse to those of the estate or the beneficiaries thereof that both cannot be fairly represented by the same person is not a proper person to administer the estate."); *Hitt v. Dumitrov*, 598 S.W.2d 355, 355–56 (Tex. App.—Houston [14th Dist.] 1980, no writ); *Haynes v. Clanton*, 257 S.W.2d 789, 790, 792 (Tex. Civ. App.—El Paso 1953, writ dism'd by agr.)).

However, the law is equally clear that an independent executor is not unsuitable simply by virtue of a claim as beneficiary under a will. *Id.* at *3 (citing *Boyles*, 309 S.W.2d at 54). The distinction lies in whether there is a dispute about the estate's assets, or whether, "through the probate process—[the executor] seeks satisfaction of his or her claim from the estate's assets." *Id.* at *4 (citing *Bays*, 622 S.W.2d at 149; *Haynes*, 257 S.W.2d at 792); *In re Estate of Gay*, 309 S.W.3d 676, 680 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

The trial court's conclusion of law regarding conflict of interest was based on two findings: that (1) Sue "resides in the house . . . which belongs to the Estate and the Estate was paying all of the utility bills until G.V. Hughes was first appointed"; and (2) Sue "desires to continue to live in the home . . . without compensation or benefit to the Estate." Under Section 37 of the Texas Probate Code, when a person dies testate, the assets of the decedent's estate "vest immediately in the devisees" until the appointment of a personal representative of the estate, after which the personal representative "shall have the right to possession of the estate as it existed at the death of

the testator or intestate." TEX. PROB. CODE ANN. § 37 (West 2003). Accordingly, from the time of the demise of Imogene Gober until the time of the appointment of a personal representative of her estate, the assets of the decedent vested in Joe and Sue as joint tenants. Under longstanding Texas law, so long as a joint tenant in possession does not bar the other from use of the commonly owned property, the tenant in possession has no obligation to pay rentals for that use. *Grieder v. Marsh*, 247 S.W.2d 590, 592 (Tex. Civ. App.—Fort Worth 1952, no writ) (citing *Thompson v. Jones*, 14 S.W. 222, 223 (Tex. 1890)). Here, until the appointment of a personal representative of the estate, the two siblings (as sole devisees under the will) stood in the position of joint tenants, and there is no evidence that Sue denied Joe of similar use of the dwelling owned by their mother's estate.

In this case, it was clear that Sue was not claiming any property of the estate as her own. She never disputed the estate's title. Rather, she was making use of the estate's property by virtue of the will, directing Joe and Sue as sole beneficiaries of the estate to "share and share alike, in fee simple." Thus, as in *Boyles*, her claim was not adverse to the estate, but was under the will as a beneficiary of the estate. *See Boyles*, 309 S.W.2d at 54.

As stated in *Boyles*, "It would be contradictory indeed for the Legislature to say in one section that a surviving spouse, a principal devisee, or a creditor should have a preference to be appointed, and in another to say that if the applicant for letters has an interest in the estate, the trial judge may on that ground refuse to appoint him as an unsuitable person. We think the Legislature

7

had no such intention." *Id.* at 53. We hold that the finding that there was a conflict of interest between Sue's personal interests and that of the estate was made in error.

### B. Allegations of Personality Conflict Were Inconsequential

The only remaining conclusion relied on by the court to find Sue unsuitable was an alleged personality conflict with Joe. Specifically, the court concluded that Sue could not serve as co-executor with Joe due to personality conflicts between the two. However, as noted by the trial court, Joe "waived his right to serve as Executor." Imogene's will specifically provided, "If either **Joe Mack Gober** or **Sue Nan Gober** is unable or unwilling to serve or to continue to serve as Independent Co-Executor, then I appoint the one remaining to serve alone."

Joe's complaint that there was family discord is inconsequential.[3] There was nothing in the record to suggest that disagreements with Joe would prevent Sue from the due administration of her mother's estate. Joe gave up the right to serve as executor. This should not have led the court to conclude that appointment of a third party as personal representative was necessary. Instead, under the will, Sue was to "serve alone."

## IV. CONCLUSION

The trial court's findings of fact and conclusions of law reveal that its denial of Sue's application for issuance of letters testamentary was in error. We, therefore, reverse the trial

---

[3]Moreover, to date, we have found no authority suggesting that family discord alone is enough to determine that a person appointed in a will to serve as executor is unsuitable. *See Guyton*, 332 S.W.3d at 691 n.4.

court's order appointing third party G. V. Hughes executor (administrator) and remand with instructions to the trial court to grant Sue's application for appointment.

Jack Carter
Justice

Date Submitted:     September 12, 2011
Date Decided:      September 15, 2011

9