

NUMBER 13-12-00049-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN THE ESTATE OF LEONA HEBERT RIDER, DECEASED

**On appeal from the County Court at Law No. 2
of Montgomery County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Vela
Memorandum Opinion by Justice Garza**

Appellant, Rebecca Dunn, appeals a trial court order removing her as dependent administrator of the estate of Leona Hebert Rider ("Rider"), deceased. By two issues, Dunn contends that the trial court abused its discretion by: (1) removing her as an administrator unsuitable to serve under section 78(e) of the probate code, *see* TEX. PROB. CODE ANN. § 78(e) (West 2003) (listing persons disqualified to serve as executor or administrator); and (2) having a policy that any personal representative who owes a debt to an estate is unsuitable to serve under section 78(e), *see id.* We hold that the

trial court did not abuse its discretion in removing Dunn as administrator, and affirm the trial court's judgment.

## I. BACKGROUND

Rider died on March 23, 2007. Rider's will made numerous specific bequests; she left her home to Dunn and Rider's son, Arliss Linder; and left the remainder of her property to her children, Janice Olmsted, Dunn, and Arliss—here, pro se appellee—who has been in prison since the will was executed in 2000. Rider named her two sisters, Alice Hebert Rigsby and Ruby Hebert Richard to serve as executors. However, Ruby died on January 3, 2008. More than three years after Rider's death, on October 5, 2010, Alice declined to serve as executor of Rider's estate.

In September 2010, Arliss filed an application to probate Rider's will, in which he admitted that he was not qualified to serve as an administrator. On January 18, 2011, Dunn filed an application for probate of Rider's will and application for issuance of letters of administration. On February 17, 2011, the trial court held a hearing on Dunn's application. Dunn testified at the hearing that she and Arliss are the principal devisees of Rider's will and that Arliss is disqualified by law from serving as an administrator. Dunn testified that excluding Rider's home, the value of the estate is approximately $1500. Dunn also stated that she had distributed some of Rider's jewelry to the beneficiaries named in the will. The trial court admonished Dunn that she had no authority to distribute Rider's property without the court's permission. At the conclusion of the hearing, the trial court declined to appoint Dunn as executor of the will.

On March 24, 2011, the trial court denied Arliss's request to appoint a temporary administrator of Rider's estate. By order dated April 11, 2011, the trial court admitted

2

Rider's will to probate, appointed Dunn as dependent administrator of Rider's estate, and set a bond in the amount of $50,000.

On June 1, 2011, on the court's own motion, the court ordered Dunn to appear at a hearing on July 28, 2011 to "show cause why [she] should not be removed" for "failure to qualify within time required." On July 21, 2011, Dunn and her counsel appeared at a hearing on Dunn's request for reduction of the bond. Dunn testified that there was credit card debt owed by the estate in the amount of $8,600. The trial court reduced the amount of the bond to $10,000.

At a hearing on July 28, 2011, Dunn's counsel reported to the court that one of the bond application questions asked if the bond applicant was indebted to the estate. Dunn advised the court that approximately ten years ago, Rider loaned Dunn's husband a credit card, and, consequently, Dunn and her husband were indebted to the estate in the amount of $6,000 in credit card debt. Of the total $8,600 in estate credit card debt, Dunn and her husband were responsible for $6,000 of it, and therefore, owed that amount to the estate. At the conclusion of the hearing, the trial court stated that it would take the matter under advisement and "do some research." The trial court commented that "there aren't a whole bunch of people jumping up to be the administrator in this estate right now." On the same day, July 28, 2011, the trial court signed an order removing Dunn as personal representative as "unsuitable to serve" under section 78(e) of the probate code.

On August 26, 2011, Dunn filed a motion to reconsider her removal as personal representative of the estate. In the motion, Dunn argued—as she does on appeal—that her removal was inappropriate under section 78(e) because: (1) the trial court

3

previously found her suitable and appointed her as administrator; (2) the trial court could only remove her without notice under circumstances listed in section 222(a) of the probate code; and (3) none of the circumstances listed in section 222(a) applied. *See* TEX. PROBATE CODE ANN. § 222 (West Supp. 2011) (listing grounds for removal of personal representative). By order dated September 22, 2011, the trial court reinstated Dunn as administrator of the estate.

On November 10, 2011, the trial court held another hearing. At the beginning of the hearing, the trial court stated:

> Okay. And [Dunn's counsel], I have removed your client based on her prior testimony in this court that she herself is indebted to the estate such that she's not an appropriate person to be the administrator. You asked me to reinstate because of some notice issues. And this hearing is a follow-up to that to ensure any notice issue with regard to her giving testimony.

Dunn's counsel told the court that Dunn admitted she was indebted to the estate and that she would pay the debt. Dunn testified that she was not able to pay the debt to the estate in full at that time. The trial court found that Dunn was not suitable to be administrator of the estate and removed her. The trial court stated that "had the information not been withheld from the Court on the initial prove-up, [it] would have never found her qualified initially. So I think that you're here with unclean hands in that respect and I am still removing her." The trial court further stated that it "was not going to start appointing people as administrators of estate[s] that owe the estate money." Dunn's counsel told the court that Dunn had already paid for the bond after the trial court reinstated her. By order dated November 21, 2011, the trial court found Dunn is indebted to the estate and is therefore unfit to serve as administrator. The order vacated the earlier order admitting the will to probate and removed Dunn as

4

administrator of the estate.  This appeal followed.[1]

## II. STANDARD OF REVIEW AND APPLICABLE LAW

By her first issue, Dunn contends that the trial court erred in removing her pursuant to section 78 (the disqualification statute), *see* TEX. PROB. CODE ANN. § 78(e), when the court was limited to the circumstances listed in section 222 (the removal statute), *see id.* § 222, in removing her as administrator.  Specifically, Dunn contends that after the trial court appointed her as administrator, it applied the wrong statute in removing her.

"The trial court is given broad discretion in determining whether an individual is suitable to serve as an executor or administrator." *Pine v. DeBlieux*, 360 S.W.3d 45, 47 (Tex. App.—Houston [1st Dist.] 2011, pet. filed); *see also In re Estate of Gober*, 350 S.W.3d 597, 599 (Tex. App.—Texarkana 2011, no pet.); *In re Estate of Gaines*, 262 S.W.3d 50, 55 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *In re Estate of Robinson*, 140 S.W.3d 801, 807 (Tex. App.—Corpus Christi 2004, pet dism'd).  We will not overturn a trial court's determination of an administrator's suitability absent an abuse of discretion.  *Pine*, 360 S.W.3d at 47.  The trial court abuses its discretion if its determination that the applicant is unsuitable is arbitrary or unreasonable.  *Gober*, 350 S.W.3d at 599.  The mere fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate court in a similar circumstance does not demonstrate that an abuse of discretion has occurred.  *Id.*  To prove the trial court abused its discretion, appellant must show that the court acted without reference to any guiding rules and principles.  *Robinson*, 140 S.W.3d at 807.

---

[1] Arliss filed a pro se appellee's brief, in which he contends that he was not notified of Dunn's January 2011 application for probate of Rider's will.

A person is statutorily disqualified from serving as an executor of an estate if that person is "[a] person whom the court finds unsuitable." *Gober*, 350 S.W.3d at 599 (quoting TEX. PROBATE CODE ANN. § 78(e)). The term "unsuitable" is not defined in the Texas Probate Code, leaving the "implication that the trial court has discretion in making that determination." *Id.* (quoting *In re Estate of Boren*, 268 S.W.3d 841, 846 (Tex. App.—Texarkana 2008, pet. denied)).

### III. DISCUSSION

Dunn argues that section 78(e) of the probate code (the disqualification statute) only applies when a court is considering the appointment of an applicant to be a personal representative, and does not apply after the court has actually made an appointment. According to Dunn, once the trial court appointed her as administrator, it was limited to considering only the grounds listed in section 222 in removing her. *See* TEX. PROBATE CODE ANN. § 222. Thus, Dunn argues that the trial court erred in removing her as "unsuitable" under section 78(e).

Dunn cites *Kappus v. Kappus*, 284 S.W.3d 831, 835 (Tex. 2009), in support of her argument that the trial court erred in applying section 78(e) when it was limited only to the grounds listed in section 222 in removing her. In *Kappus*, the supreme court found that the catch-all "unsuitability" standard of section 78(e) did not apply to removal of an independent executor, which was limited to the enumerated reasons for removal in section 149(C) of the probate code. *Id.*; *see* TEX. PROBATE CODE ANN. § 149(C) (West Supp. 2011) (listing grounds for removal of independent executor). The *Kappus* court stated that "the grounds to *remove* an independent executor *post-appointment* are

6

different from those to *disqualify* an executor *pre-appointment*." *Id.* The court further noted:

> Probate Code section 78 sets out five different bases for disqualification of a would-be executor, including "[a] person whom the court finds unsuitable." In contrast to this catch-all standard that confers broad trial-court discretion, section 149C lists six specific grounds for removal [of an independent executor], none quite as expansive as unsuitability.

*Id.* (internal citations omitted). In *Kappus*, the decedent named his brother as independent executor of his will. *Id.* at 834. The decedent and his brother co-owned certain property, which the brother proposed to sell and share the proceeds of the sale 50/50 between the estate and himself. *Id.* The decedent's ex-wife challenged the 50/50 distribution, claiming that the estate was owed more than 50% of the proceeds because of improvements made to the property by the decedent; she also sought the brother's removal as independent executor. *Id.* The trial court found that the estate was entitled to a greater share of the proceeds from the sale of the property, but refused to remove the brother as independent executor. *Id.* The court of appeals reversed the trial court's decision on removal, finding that the brother's shared ownership of the property created a conflict of interest. *Id.* The supreme court, however, noted that in contrast to the "catch-all standard" of unsuitability applicable for disqualification of a would-be excecutor under section 78(e), the grounds for removal of an independent executor list specific grounds, and do not include grounds "as expansive as unsuitability." *Id.* at 835. The court concluded that "[a] good-faith disagreement between an executor and the estate over the percentage division and valuation of estate assets is not grounds for removal [under section 149C of the probate code] as a matter of law." *Id.* at 839. The court continued, "[s]uch a development would (1) depart from the specific grounds for

7

removal listed in the statute, (2) frustrate the testator's choice of executor (particularly the common practice of appointing spouse-executors), and (3) impede the broader goal of supporting the independent administration of estates with minimal costs and court supervision." *Id.*

We are unpersuaded that the holding in *Kappus* precluded the trial court from reconsidering Dunn's appointment and from removing her as unsuitable on the basis of information acquired by the trial court after the appointment. Even if we accept Dunn's argument that section 78 "only applies to conduct before a personal representative is appointed," whereas section 222 "applies starting at the point of appointment," Dunn's debt to the estate was "conduct" or a condition that existed prior to her appointment— the trial court simply was not given the information.[2] At the November 10, 2011 hearing, after removing Dunn as administrator, the trial court made the following comments:

> Okay. Well, again, Counselor, she already had one timeframe where she failed to qualify like she was supposed to. And she has not completed the qualification process to become administrator. And had the information not been withheld from the Court on the initial prove-up, I would have never found her qualified initially. So I think that you're here with unclean hands in that respect and I am still removing her. So if you want to take it up to the Supreme Court, that is certainly within your realm to be able to do. But I have never, Judge Winfree has never, and I'm not going to start appointing people as administrators of estate[s] that owe the estate money. That puts her in a position where she has to sue herself. And quite frankly she's not going to do that. And she can't rectify the situation like you told me she's going to because she has just testified that she doesn't have the money. So it's just wholly inappropriate for her to be administrator of this estate.

We also note that the record is unclear with regard to how the estate's debt was being managed. At the July 28, 2011 hearing, when the trial court first learned of Dunn's debt, Dunn's counsel told the court:

---

[2] It is unclear when Dunn's counsel learned of Dunn's debt to the estate, although the record suggests that he likely learned of it when a question on the bond application brought up the issue.

8

When we went to apply for the bond, there was a question on the bond application that brought up an issue. One of the questions was, are you indebted to the estate. About ten years ago, the decedent lent her credit card to Mrs. Dunn's husband, who at the time was unemployed. He was not able to pay the bill, and there was a $6,000 debt on that credit card. That debt carried forward. It was put into the money management account with her other credit cards, with the decedent's other credit cards. And at the time they were helping her to pay the money management, a portion every month of the amount owed to the money management. And because of an inherent conflict of interest, I thought it would be better to be forthcoming to you and to let you know about this.

It is unclear from this explanation what debt was included in the "money management account" and whether the Dunns were making any payments on the amounts owed. We conclude that, under these circumstances, we cannot say that the trial court abused its discretion in removing Dunn as administrator. We overrule Dunn's first issue.

## IV. TRIAL COURT'S STATED POLICY

By her second issue, Dunn argues "in the alternative" that the trial court abused its discretion by stating its policy of refusing to appoint anyone that is indebted to an estate as an administrator of that estate. Dunn asserts that "no Texas court appears to have decided whether a debt owed to the estate renders an applicant unsuitable." Dunn complains that the trial court abused its discretion by "adopting such a per se rule."

As noted, "[n]o comprehensive, discrete explanation exists delineating the attributes which make someone unsuitable" and the trial court therefore has "broad discretion in determining whether an individual is 'suitable' to serve as an executor." *Gaines*, 262 S.W.3d at 56. We have every confidence that, in making future determinations as to whether an individual is suitable to serve as an administrator, the

trial court will exercise its broad discretion appropriately.  We decline to find the trial court abused its discretion in stating its policy.  We overrule Dunn's second issue.

## V. Conclusion

We affirm the trial court's judgment.

_____
DORI CONTRERAS GARZA
Justice

Delivered and filed the
16th day of August, 2012.