

In The

# Court of Appeals

## Seventh District of Texas at Amarillo

_____

No. 07-14-00024-CV
_____

LEE ANN BOLINGER, APPELLANT

V.

JUDY BETH WILLIAMS, APPELLEE

On Appeal from the 222nd District Court
Deaf Smith County, Texas
Trial Court No. CI-10F-095; Honorable Roland Saul, Presiding

December 21, 2015

## MEMORANDUM OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

This is an appeal arising from the first stage of a suit for the partition of real property.  Appellee, Judy Beth Williams, filed suit against her sister, Lee Ann Bolinger, pursuant to Part VII, Section 4 of the Texas Rules of Civil Procedure, seeking partition of jointly owned real property.  *See* TEX. R. CIV. P. 756 – 771.  Following a bench trial, the trial court entered its *Decree Directing Partition and Appointing Commissioners,* declaring the real property in question (1,000+ acres of rural grassland) to be

"susceptible to fair and equitable partitioning between the parties so as to reflect their respective interests." Because the parties previously agreed Bolinger would receive an improved portion of the property, for purposes of an equitable division, the court valued those improvements and accompanying acreage at $250,000. In order to further adjust the equities, the judgment also provided for a "net equitable adjustment" of $10,252 in favor of Williams. Finally, the judgment provided for the appointment of commissioners pursuant to Rule 761. TEX. R. CIV. P. 761.

Following entry of the *Decree Directing Partition and Appointing Commissioners,* Bolinger timely filed her notice of appeal regarding that judgment. Through six issues, Bolinger contends the evidence was legally and factually insufficient to support the trial court's findings pertaining to the value of various improvements (issues one and two), the trial court erred in adjusting the equities by charging her for the use of land she owned (issues three, four, and five), and there was no evidence to support findings that Bolinger had the sole duty to preserve the common property (issue six). We affirm in part and reverse and render in part.

Notwithstanding the pending appeal, the commissioners proceeded to partition the property, filing their *Report of Commissioners* on February 6, 2014. To date, the trial court has not confirmed the commissioner's report and that phase of this partition proceeding is not before this court at this time.

BACKGROUND

Bolinger and Williams jointly own, as tenants in common, 1,063.206 acres of remotely located, relatively homogenous, flat grassland situated in Deaf Smith County,

Texas.[1]  The two claimants acquired their respective interests through inheritance and purchase, with Bolinger owning an undivided two-thirds interest and Williams owning an undivided one-third interest.

Situated on the property are some improvements consisting of two residences ("grandmother's house" and the "main house"),[2] some livestock corrals, and various out buildings.[3]  In 1986, Bolinger began occupying the land and living in the main house, under an agreement where each co-tenant would pay her proportionate share of taxes, insurance, water well maintenance, and other expenses.  In 1989 or 1990, Bolinger began operating a buffalo business on the west one-third of the property (the "buffalo pasture") and a registered paint horse business on the east two-thirds of the property (the "east pasture").  Although Bolinger never paid Williams for her use of the property, Bolinger and Williams would occasionally lease out the east pasture, with each party receiving one-half of any revenue (despite the difference in their ownership interests).  While she occupied the property, Bolinger paid for windmill and well repair, upkeep and improvement of the main house,[4] and maintenance of the property through the control of prairie dogs.[5]

---

[1] An undivided possessory interest in property is a tenancy in common.  *Dierschke v. Central Nat'l Branch of First Nat'l Bank*, 876 S.W.2d 377, 379 (Tex. App.—Austin 1994, no writ).

[2] Bolinger and Williams disagreed on the habitability of grandmother's house, with Bolinger believing the structure's only value was as storage.  At the time of trial, the structure had not been occupied in over twenty-six years.

[3] Other improvements included a barn with hayloft, two boxcars, and a mare barn.

[4] Bolinger testified that she updated the main residence by putting in garage doors, adding a new wood floor, replacing carpet, and remodeling the kitchen.

[5] Bolinger testified that she paid $13,101 to control prairie dogs on the buffalo pasture and that Williams refused to contribute to that expense.

Prior to trial, the parties agreed Bolinger would receive the improved portion of the property, including approximately ten acres upon which the improvements sat. The value of those improvements was a contested issue at trial.[6] As plaintiff, Williams offered her own testimony as well as that of her expert witnesses, Gary Clements and Dwight Turner. In response, Williams offered the testimony of her expert, Tom Gergens. At the conclusion of the hearing, the court found the value of the improved acreage to be $250,000. Bolinger contests the qualifications of Williams's expert witnesses and the sufficiency of the overall evidence regarding valuation of the improvements in question.

In its final decree, the trial court also found that Williams was entitled to a "net equitable adjustment," by way of a $10,252 credit, to account for the following:

(1) Bolinger should receive a credit of $14,322 for the increase in the value of the property due to her construction of a swimming pool;

(2) Bolinger should receive a credit of $14,325 for the increase in the value of the property due to her construction of a metal shop building;

(3) Bolinger should receive a credit of $13,101 for expenditures she made to benefit the property by way of prairie dog control;

(4) Williams should receive a credit of $52,000 for Bolinger's "pasture useage (sic) and damage to the 'buffalo pasture.'"

As to these four adjustments, Bolinger contests the trial court's finding that she owed Williams $52,000 for use of commonly-owned property in the absence of any agreement between the two co-tenants.

---

[6] The parties agreed Bolinger would receive the mare barn without having to account to Williams for its value.

4

Finally, the trial court appointed three "competent and disinterested persons" to serve as commissioners to make the partition and report back to the trial court. In making their partition, the commissioners were ordered to consider, "as far as possible," the value of the improvements (and adjacent ten acres) to be awarded to Bolinger and the net equitable adjustment. While both parties agree partition of the property is appropriate and Bolinger should receive the improved portion of the property, they disagree as to whether the evidence supports the net equity adjustment or the value of the improvements.

PARTITION SUITS

Unlike most civil proceedings, a suit for partition of real property has two final judgments, both of which are independently appealable. *Griffin v. Wolfe,* 610 S.W.2d 466, 466 (Tex. 1980); *Lawrence v. Stafford,* No. 07-05-00050-CV, 2006 Tex. App. LEXIS 2632, at *5 (Tex. App.—Amarillo March 31, 2006, pet. denied). During the initial stage of a partition proceeding the trial court has the authority to:

- determine all questions of law or equity affecting title to the disputed property;

- determine whether the property is "susceptible to partition";

- determine the fractional share or interest of each of the joint owners or claimants;

- determine the valuation of improvements so as to provide for the adjustment of equities between the parties; and

- appoint commissioners to partition the property "in accordance with the respective shares or interests of each of such parties entitled thereto."

TEX. R. CIV. P. 760, 761; *Snow v. Donelson,* 242 S.W.3d 570, 572 (Tex. App.—Waco 2007, no pet.); *Yturria v. Kimbro,* 921 S.W.2d 338, 342 (Tex. App.—Corpus Christi 1996, no writ); *Ellis v. First City Nat'l Bank,* 864 S.W.2d 555, 557 (Tex. App.—Tyler 1993, writ denied) (holding that before rendering the first decree, the trial court has the authority "to adjust all equities between the parties"). "Thus, proof is made to the factfinder at trial of the existence and value of improvements to the property at the time of partition and of other equitable considerations which may warrant awarding a particular portion of the property to one of the parties." *Campbell v. Tufts,* 3 S.W.3d 256, 259 (Tex. App.—Waco 1999, no pet.). During this first proceeding, the merits of the case are determined and the rights of the parties are concluded. *Id.* Based on the findings of the judge or jury, the trial court then enters its first judgment, appointing commissioners to make a final division of the property based on instructions to them which account for those equitable findings. *Id.* It is this *first judgment* that is the subject of this appeal.

After the finality of the first judgment has been determined, and once the commissioners have examined the disputed property and determined a division of the property "in accordance with the directions contained in the [first] decree and with the provisions of law and these rules (Rules 756 – 771)," they then make a report to the trial court, under oath, recommending the actual partition of the property. TEX. R. CIV. P. 766, 769. Within thirty days of the date the report is filed, any party to the partition suit may file objections with the trial court. TEX. R. CIV. P. 771. The only question which could properly arise on the report of the commissioners would be a question concerning whether the division of property was performed in conformity with instructions contained

6

in the first judgment.  *Campbell*, 3 S.W.3d at 259.  Texas courts have uniformly held that matters decided by the first judgment entered in a partition proceeding cannot be challenged in an appeal from the trial court's second judgment adopting the commissioner's report and partitioning the property.  *White v. Mitchell*, 60 Tex. 164, 1065 (1883); *Goldberg v. Zinn*, No. 14-11-01091-CV, 2013 Tex. App. LEXIS 6867, at *17-18 (Tex. App.—Houston [14th Dist.] June 6, 2013, no pet.); *Hill v. Jarvis,* No. 12-07-00091-CV, 2008 Tex. App. LEXIS 4879, at *6 (Tex. App.—Tyler June 30, 2008, pet. denied); *Lawrence*, 2006 Tex. App. LEXIS 2632, at *5; *Martin v. Dosohs I, Ltd.*, 951 S.W.2d 821, 824 (Tex. App.—San Antonio 1997, no pet.); *Marmion v. Wells,* 246 S.W.2d 704, 705 (Tex. Civ. App.—San Antonio 1952, writ ref'd).

The second judgment may then approve the commissioner's report and set aside to the joint owners or claimants their fractional share or interest in the disputed property in accordance with that report, or it may find the report "to be erroneous in any material respect, or unequal and unjust" and reject it.  *Campbell*, 3 S.W.3d at 259; *Ellis,* 864 S.W.2d at 557.  Again, although a *Report of Commissioners* has been filed in this case, the efficacy of that report is not the subject of this appeal.

ISSUES ONE AND TWO—VALUATION OF IMPROVEMENTS

Bolinger contends the evidence was legally and factually insufficient to support the trial court's finding that the improvements in question had a value of $250,000. Specifically, she contends Williams's personal testimony concerning the value of the improvements constituted "no evidence" because she had no basis for her opinion and,

7

as such, her testimony was not admissible under the "property owner rule."[7]  Bolinger further contends Turner's opinion of fair market value was unsubstantiated and unreliable because (1) he is not qualified to appraise farm and ranch land and (2) the methodology he used to determine fair market value was flawed.  Finally, Bolinger contends that Gary Clements's "replacement value testimony" was no evidence of the value of the improvements to the property.

Where, as here, the trial court has made findings of fact, we extend to those findings the same force and dignity as we would to a jury's verdict upon questions.  *Anderson v. City of Seven Points,* 806 S.W.2d 791, 794 (Tex. 1991).  As such, we apply the same standards of review we would apply in reviewing the legal and factual sufficiency of the evidence supporting a jury's finding.  *Id.*

In reviewing a legal sufficiency issue, we may sustain the challenge only when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence, or (d) the evidence conclusively establishes the opposite of the vital fact in question.  *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 751 (Tex. 2003), *cert. denied,* 541 U.S. 1030, 124 S. Ct. 2097, 158 L. Ed. 2d 711 (2004); *Raw Hide Oil & Gas, Inc. v. Maxus Exploration. Co.,* 766 S.W.2d 264, 275-76 (Tex. App.—Amarillo 1988, writ denied).  In determining whether there is legally sufficient evidence to support the finding under review, a reviewing court must view the evidence in a light most favorable

---

[7] Generally, a property owner is qualified to testify as to the market value of her own property, even if she is not qualified as an expert on property valuations in general.  *See Porras v. Craig*, 675 S.W.2d 503, 504 (Tex. 1984).  This rule is based on the presumption that an owner is familiar with her own property and knows its value.  *See id.*

to the judgment, indulging every reasonable inference that supports it, but the court may not disregard evidence that allows only one inference. *City of Keller v. Wilson,* 168 S.W.3d 802, 822 (Tex. 2005). The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *Id.* at 827.

When reviewing a factual sufficiency claim, we may sustain the challenge only when the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965). In reviewing factual sufficiency, the reviewing court must consider, examine, and weigh all of the evidence in the record. *Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 406-07 (Tex. 1998), *cert. denied,* 525 U.S. 1017, 119 S. Ct. 541, 142 L. Ed. 2d 450 (1998). In doing so, the court no longer considers the evidence in the light most favorable to the finding; instead, the court considers and weighs all the evidence and sets aside the disputed finding only if it is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Id.* at 407.

At trial, Williams opined that the value of the main house alone was $250,000 and the value of the entire improvements was $297,000. While Bolinger challenged Williams's testimony as being inconsistent with positions she had previously taken, ultimately the trial judge, as the trier of fact, was the sole judge of her credibility as a witness and the weight to be given her testimony. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986). Accordingly, the trial court was entitled to consider Williams's opinion in determining the value of the property.

Bolinger further contends, and we agree, that while the "property owner rule" generally allows a property owner to testify concerning the value of property owned, it does not abrogate the requirement that a witness must be personally familiar with both the property and its fair market value. *See Reid Rd. Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd.,* 337 S.W.3d 846, 850 (Tex. 2011). As stated by the Supreme Court in *Speedy Stop,* the property owner rule creates a rebuttable presumption that a property owner is familiar with the property and its fair market value. That said, we do not agree with Bolinger that those presumptions were rebutted in this case. Williams provided detailed testimony that clearly demonstrated her personal knowledge of and familiarity with the subject property and its value. She was familiar with the property's ownership history, including the fact that her father resided on the property for more than ten years prior to his death in 1984. She owned other real property in the general vicinity, she was familiar with the layout of the land, she had personal knowledge of the income-producing capacity of the disputed property, and she was knowledgeable concerning the property's improvements and general usage. Furthermore, Williams had participated in negotiating grazing leases and was familiar with the actual history of grazing revenue from the property.

As to the value of the property, Bolinger contends that Williams's opinion has no substantive basis in fact and is flawed because she relied upon Turner's flawed appraisal concluding that the market value of the ten acres with the improvements was $300,000 and Clements's insurance evaluation that the replacement cost of the main residence was $284,646. Bolinger contends that Turner's opinion was flawed because

his methodology was unreliable and Clements's opinion was irrelevant because it was only an estimate of the cost to replace the main residence, not its actual market value.

Even if we were to assume that the opinion testimony of both Turner and Clements was unreliable, it cannot be said that Williams blindly pulled her opinion of market value out of thin air. She established a substantial basis for forming her opinion including, but not limited to, a diligent effort to seek out the informed (even if inadmissible) opinion of others concerning the market value of the property. *See Porras*, 675 S.W.2d at 505. As such, Williams's testimony alone was sufficient to support the trial court's finding as to the value of the improvements. Applying the applicable standards set forth above, we cannot say that the evidence supporting the trial court's decision relating to valuation of the improvements was either legally or factually insufficient.

Because we find Williams's testimony to be sufficient to support the trial court's determination concerning value of the improvements, we need not address Bolinger's individual complaints concerning the reliability of Turner's and Clements's expert opinion testimony. *See* TEX. R. APP. P. 47.1. Issues one and two are overruled.

ISSUES THREE, FOUR, AND FIVE—EQUITY ADJUSTMENT

Bolinger next contends the trial court erred in finding that she owed Williams $52,000 for unpaid pasture usage and damage to the buffalo pasture because there was no agreement between the two co-tenants that she would pay for usage of property which she co-owned. Bolinger further contends her use of the property did not "damage" the property and there was no evidence to support a finding of "lost profits" in

11

the sum of $52,000. Because the trial court did not make any findings regarding "lost profits" or damages, but rather found that Bolinger should have paid Williams $52,000 for her "share of pasture usage," as to issues three, four, and five, we will limit our discussion to that question.

At trial, Williams testified that, on average, from 1989 until 2011, she received 71 cents per acre per year as income from the commonly owned property. For that same period, Williams claimed that she netted $6.49 per acre per year as income on similar property that she separately owned. According to her claims, if she would have received the $6.49 per acre per year on that portion of the property that was previously leased to third parties, she would have received $52,990.85. Williams contends she was deprived of that rental income because Bolinger used the entire property.

Under longstanding Texas law, in absence of an agreement to the contrary, co-tenants have the absolute right to enter upon, possess, and use the entirety of the common estate. *Byrom v. Pendley*, 717 S.W.2d 602, 605 (Tex. 1986). So long as the co-tenant in possession does not bar the other co-tenant from using the commonly owned property, there is no obligation to pay for the use of the property. *In re Estate of Gober*, 350 S.W.3d 597, 601 (Tex. App.—Texarkana 2011, no pet.) (holding that as long as a joint tenant in possession does not bar the other from use of the commonly owned property, the tenant in possession has no obligation to pay rentals for the use of that property).

Here, Williams does not contend that she was somehow barred from using the commonly owned property; instead, she contends she was damaged because there

was an agreement that she and Bolinger would split the grazing revenue from any third party and Bolinger's use of the property prevented such a third-party lease.[8] It was undisputed, however, that there was no agreement between Bolinger and Williams for the payment of rent by Bolinger occasioned by her use of the property. The only agreement that existed between Bolinger and Williams was that they would split any revenue from a third party. They did not agree, and the trial court did not find, any agreement between Bolinger and Williams concerning compensation to Williams for Bolinger's use of the property. Therefore, as a matter of law, because Bolinger was entitled to possession of the entire common property and there was no agreement, express or implied, that she would pay Williams for her use of the property, Bolinger was not obligated to pay rent to Williams for that use. Accordingly, to the extent that the trial court awarded Williams a credit in the sum of $52,000 for Bolinger's use of the common property, it erred. Issues three, four, and five are sustained.

ISSUE SIX—DUTY TO PRESERVE COMMON PROPERTY

By her sixth and final issue, Bolinger contends the trial court acted without regard to controlling legal principles when it found that she had the sole duty to preserve the common property and that she breached that duty by failing to control prairie dogs on the buffalo pasture.

While there is no duty to restore commonly owned property to its original condition or some condition that existed before possession by one co-tenant, each co-tenant owes a duty to the other co-tenants to preserve and protect the common estate from waste. *See Lilly v. Lilly*, No. 06-00-00064-CV, 2001 Tex. App. LEXIS 1106, at *9

---

[8] Williams admitted that during certain years the property was not leased out due to the drought.

(Tex. App.—Texarkana Feb. 22, 2011, no pet.). While the term "waste" does not include ordinary depreciation due to age or use, the failure of a co-tenant to protect the common property can amount to an act of waste, subjecting the co-tenant to a claim for damages. *See Hill v. Jarvis,* No. 12-07-00091-CV, 2008 Tex. App. LEXIS 4879, at *9 (Tex. App.—Tyler June 30, 2008, pet. denied); *Sadler v. Duvall,* 815 S.W.2d 285, 292-93 (Tex. App.—Texarkana 1991, writ denied). *See also Guffey v. Stroud*, 16 S.W.2d 527, 529 (Tex. Comm'n App. 1929, opinion adopted).

Here, the trial court found that the value of the buffalo pasture was diminished due to over-grazing and inadequate prairie dog control. It did not, however, find that Bolinger committed waste with respect to the property. Instead, the court specifically found that any damage to the buffalo pasture was non-quantifiable. Under the facts of this case, the $52,000 credit cannot be justified as compensation to Williams for any "damage" to the property caused by Bolinger's husbandry of the land. Accordingly, issue six is sustained.

CONCLUSION

The judgment of the trial court is affirmed as to (1) the determination that the real property in controversy is susceptible to a fair and equitable partition, (2) the value of the improvements and adjacent ten acres is $250,000, and (3) the appointment of commissioners pursuant to Rule 761 of the Texas Rules of Civil Procedure. The judgment is reversed as to the trial court's finding of a "net equitable adjustment" in favor of Williams, and judgment is rendered that Bolinger is entitled to a "net equitable adjustment" of $41,748; in all other respects the judgment is affirmed.

Accordingly, the judgment is affirmed in part, reversed and rendered in part; and, given the unique character of partition proceedings, this cause is remanded to the trial court for further proceedings consistent with Rules 756 through 771 of the Texas Rules of Civil Procedure and this opinion.[9]

Patrick A. Pirtle
Justice

---

[9] Although a *Report of Commissioners* has already been filed in this case, the efficacy of that report was not the subject of this appeal. Accordingly, we express no opinion as to that report. That being said, after the finality of this first judgment has been determined, the trial court shall either consider the report as filed, or it may order the commissioners to submit a new report in accordance with the modified judgment. Without ruling on the question of whether the division of property as set forth in the *Report of Commissioners* was performed in conformity with the instructions contained in a decree from the first phase of this partition proceeding, we express sincere concern as to how a report could be performed "in accordance with such decree" when we have found error in the original judgment. *See* TEX. R. CIV. P. 761.